STAN S. MALLISON (SBN 184191)
    stanm@themmlawfirm.com
HECTOR R. MARTINEZ (SBN 206336)
    hectorm@themmlawfirm.com
MARCO A. PALAU (SBN 242340)
    mpalau@themmlawfirm.com
JOSEPH D. SUTTON (SBN 269951)
    jsutton@themmlawfirm.com
ERIC S. TRABUCCO (SBN 295473)
    etrabucco@themmlawfirm.com
HILARY HAMMELL (SBN 291347)
    hhammell@themmlawfirm.com
MALLISON & MARTINEZ
1939 Harrison Street, Suite 730
Oakland, California  94612
Telephone: (510) 832-9999
Facsimile:  (510) 832-1101

MARIO MARTINEZ (Bar No. 295473)
mmartinez@farmworkerlaw.com
EDGAR AGUILASOCHO (Bar No. 285567)
eaguilasocho@farmworkerlaw.com
MARTINEZ AGUILASOCHO & LYNCH, APLC
P.O. Box 11208
Bakersfield, California 93389-1208
Telephone: (661) 859-1174
Facsimile: (661) 840-6154

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA—FRESNO DIVISION

| | |
|---|---|
| CARMELA MORA, on behalf of herself and all others similarly situated,<br><br>           Plaintiffs,<br><br>           vs.<br><br>CAL WEST AG SERVICES, INC., JON MARTHEDAL, ERIC MARTHEDAL; and Does 1 through 20, inclusive,<br><br>           Defendants. | Case No. 15-CV-01490-LJO-EPG<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:      May 4, 2018<br>Time:     10:00 a.m.<br>Location:   2500 Tulare Street<br>              Courtroom 10, Sixth Floor<br>               Fresno, CA  93721 |

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................1

II. STATEMENT OF FACTS ....................................................................................3

    A. Summary of the Litigation ............................................................................3

    B. Settlement Negotiations ................................................................................3

III. SUMMARY OF SETTLEMENT TERMS ...........................................................4

    A. The Gross Settlement Payment .....................................................................4

    B. Payment of Settlement Shares ......................................................................4

    C. Distribution of Uncashed Checks .................................................................5

    D. Scope of the Class Member Releases ...........................................................6

    E. Objections and Opt-Out Process ..................................................................6

    F. Class Representative Payments; Class Counsel Attorneys' Fees Payment and Class Counsel Litigation Expenses Payment ................................................6

IV. THE MOTION FOR PRELIMINARY APPROVAL SHOULD BE GRANTED ...............7

    A. Preliminary Approval of the Settlement Is Appropriate ...............................7

        1. The Settlement Was the Product of Informed, Non-Collusive Negotiations ......................................................................................8

        2. The Proposed Settlement Has No "Obvious Deficiencies." ...............8

        3. The Settlement Falls Within the Range of Possible Approval ...........9

            a) Liability Is Contested and the Settlement Provides Class Members Substantial Monetary Relief ...........................................9

            b) The Class Release Is Appropriate Given Plaintiffs' Claims. ..........10

    B. Conditional Certification of a Settlement Class Is Appropriate ..................10

        1. The Numerosity Requirement Is Met ..............................................11

        2. The Commonality Requirement Is Met ............................................11

        3. The Typicality Requirement Is Met .................................................11

        4. Adequacy of Representation ............................................................12

        5. Class Certification Is Proper Under Rule 23(b)(3) ..........................12

    C. The Proposed Notice, Claim Form, Election Not to Participate Form, and Notice

Memorandum ISO Motion for Preliminary Approval of Class Settlement     *Case No.* 13-cv-03230-EDL

Plan Are Fair and Adequate ...................................................................... 12

D.   Simipluris Should Be Appointed the Settlement Administrator .................................. 13

E.   Proposed Schedule ...................................................................... 14

V.   CONCLUSION ...................................................................... 14

Memorandum ISO Motion for Preliminary Approval of Class Settlement          *Case No.* 2:16-cv-02120

1

## **TABLE OF AUTHORITIES**

2

3

Federal Statutes

4

Fed. R. Civ. P. 23 ...........................................................................................................7, 10, 11, 12

5

Treatises

6

*Manual for Complex Litigation, Third* (Fed. Judicial Center 1995).................................................7

7

*Newberg on Class Actions* 4th (2002) .........................................................................................7, 8

8

Federal Cases

9

*Churchill Village, LLC v. General Electric*, 361 F.3d 566 (9th Cir. 2004 .....................................12

10

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ....................................................7

11

*Cypress v. Newport News General and Nonsectarian Hospital Ass'n*, 375 F.2d 648 (4th Cir. 1967) ...............................................................................................................................................11

12

13

*Dennis v. Kellogg Company*, 697 F.3d 858, 865 (9th Cir. 2012) .....................................................5

14

*Ellender v. Schweiker*, 550 F. Supp. 1348 (S.D.N.Y. 1982) ..........................................................11

15

*Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461 (E.D. Pa. 2000) ........................................10, 11, 12

16

*Gay v. Waiters' & Dairy Lunchmen's Union*, 489 F. Supp. 282 (N.D. Cal. 1980).......................11

17

*Gordon v. Forsyth Cty. Hosp. Auth., Inc.*, 409 F. Supp. 708 (M.D.N.C. 1975)............................11

18

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ...............................................7, 11, 12

19

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007).....................................8, 9

20

*In re Traffic Exec. Ass'n*, 627 F.2d 631 (2d Cir. 1980) ...................................................................8

21

*Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168 (S.D.N.Y. 2008)................................................11

22

*McNeill v. New York City Housing Authority*, 719 F.Supp. 233 (S.D.N.Y. 1989).........................11

23

*Mendoza v. U.S.*, 623 F.2d 1338 (9th Cir. 1980) ..........................................................................12

24

*Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011)...................................................................6

25

*North County Contractor's Assn., Inc. v. Touchstone Ins. Svcs.*, 27 Cal. App.4th 1085 (1994).......8

26

*Pottinger v. City of Miami*, 720 F.Supp. 95 (S.D. Fla. July 21, 1989) ...........................................11

27

*Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) ....................5

28

*Susquehanna Tp. v. H and M, Inc.*, 98 F.R.D. 658 (M.D.Pa. 1983)...............................................11

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) ........................................................7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Memorandum ISO Motion for Preliminary Approval of Class Settlement          *Case No.* 2:16-cv-02120

## I.      **INTRODUCTION**

Plaintiff Carmela Mora ("Plaintiff") and defendants Jon and Eric Marthedal (collectively, "Defendants")[1], present this proposed wage-and-hour class action settlement in accordance with the terms of the Settlement Agreement (the "Settlement") attached to the accompanying declaration of Stan Mallison (hereinafter "Mallison Decl.") as Exhibit 1. The Settlement is for a maximum of $185,000, which covers: payments to the named Plaintiff (subject to court approval), in addition to her Settlement Shares, up to $10,000 as compensation for her role as Class Representative (Settlement § III.C.1.); payments to Class Counsel of up to 33.33% of the gross settlement amount ($61,661) for their reasonable attorneys' fees, as well as up to $10,000 for their reasonable litigation expenses incurred in investigating the case, prosecuting the case, preparing for and negotiating at the mediations and settlement conference, conducting an elaborate document and damages analysis in this case, documenting the Settlement, securing approval of the Settlement, and related tasks (Settlement § III.C.2); a $5,000 payment to the California Labor and Workforce Development Agency ("LWDA") as the LWDA's share of the settlement of civil penalties under this agreement; and payment of up to $10,000 to the Settlement Administrator for its reasonable fees and expenses (Settlement § III.C.4). The Settlement is non-reversionary to Defendants and, if approved, the entire Settlement payment of $185,000 will be distributed as indicated herein. *See* Settlement, § III.A.

The claims process will proceed as follows: the "Net Settlement Amount" will be distributed to all Class Members who submit timely and valid claim forms ("Claimants") on a *pro rata* basis based on the Claimant's total number of workweeks of employment during the Class Period. *See* Settlement, § III.E.1. The respective Settlement Shares of Class Members who timely submit an Election Not to Participate (Non-Participating Class Members), as well as Participating Class Members who fail to timely submit a Claim Form, will be distributed to Claimants in amounts proportional to their Settlement Shares. *See* Settlement, § III.G.3-4.

---

[1] Plaintiff Carmela Mora and Defendant Cal West Ag. have sought Cal West's dismissal from this action by stipulation. However, final approval of this class action settlement will dispose of the entire matter.

A Claimant must cash his or her Settlement Share check within six (6) months after it is last mailed to him or her. Settlement, § III.G.7. If a check is returned to the Settlement Administrator, the Settlement Administrator will make all reasonable efforts to re-mail it to the Claimant at his or her correct address. *Id*. If the check is not cashed within three (3) months after its mailed to the Claimant, the Settlement Administrator will send the Claimant a letter informing him or her that unless the check is cashed within three (3) months, it will expire and become non-negotiable, and offer to replace the check if it was lost or misplaced but not cashed. *Id*. If the check remains uncashed by the expiration of the three (3) month period after this notice, the funds will be distributed to California Rural Legal Assistance, Inc. on a *cy pres* basis. *Id*.

The Settlement represents informed, closely negotiated compromises on both sides. Mallison Decl., ¶¶ 36, 37. The Settlement was reached after Defendants' production of electronic and paper payroll and timekeeping data to Plaintiff, and extensive negotiations during mediation with mediator Steven Vartabedian. *Id*. Based on a detailed knowledge of the issues present in this action, Plaintiffs and their counsel are convinced that the Settlement is the best possible recovery under the circumstances, and in the best interest of Class Members. *Id*., ¶¶ 47-53.

Specifically, counsel for Plaintiff balanced the terms of the Settlement, including both the Settlement amount and the benefits conferred to Class Members by the Settlement, against the probable outcome of a wide range of issues at trial. Mallison Decl. ¶¶ 47-49. Counsel for Plaintiff carefully considered the risks of trial and other normal perils of litigation, including the merits of the affirmative defenses asserted by Defendants, the difficulties of complex litigation, the lengthy process of establishing specific damages, the difficulty in fully analyzing and utilizing the evidence at issue in this case, new legal decisions affecting pivotal issues in the case, class decertification issues, and other various possible risks and delays. *Id*. Plaintiff's counsel realizes that no matter how good the facts and law, every trial retains inherent risk while the proposed settlement provides a certain recovery for Class Members. *Id*. Further, litigation or trial of the matter would risk substantial delay of compensation to Class Members. *Id*.

As discussed below, the Settlement satisfies the criteria for preliminary settlement approval under federal law and falls well within the range of proper approval. Accordingly, the parties now

1   move the Court for an order conditionally certifying the Settlement class, granting preliminary

2   approval of the Settlement, appointing the Class Representative and Class Counsel, approving and

3   directing distribution of the Class Notice and related materials to the Class, appointing the

4   Settlement Administrator, and scheduling a final approval hearing.

5

6   II.     **STATEMENT OF FACTS**

7           A.      **Summary of the Litigation**

8           This is a wage and hour class action settlement proposed for approximately 225 non-

9   exempt field workers who worked for Defendants for the relatively brief time from April 30, 2015

10  to June 5, 2015 picking and packing blueberries. Plaintiff sued Defendants to recover wages and

11  penalties due as a result of Defendants' illegal piece-rate compensation scheme and unlawful rest

12  period practices. Mallison Decl. ¶2.

13          After the complaint was filed, Plaintiff conducted substantial discovery and non-discovery

14  investigation regarding class certification and the merits of their claims. Mallison Decl., ¶¶ 33-35.

15  Plaintiff conducted discovery, including an extensive set of document requests demanding all of

16  the critical payroll and timekeeping information at issue in this case and the names and contact

17  information. *Id*. The records demonstrated in an objective manner what occurred (in terms of hours

18  and wages) at the workplace at substantial times during the class period and served as a solid

19  foundation for a damage model in this case. Although laborious, it was the only means of providing

20  the detailed analysis necessary to obtain the favorable mediation results obtained. *Id*. at ¶35.

21          B.      **Settlement Negotiations**

22          The parties have participated in an all-day mediation before mediator Steven Vartabedian,

23  retired Associate Justice for the California Court of Appeals for the Fifth Circuit. Mr. Vartabedian

24  was thoroughly apprised of the arguments and facts of this case by means of extensive briefing

25  and factual presentations. Mallison Decl. ¶36. As a result, the parties agreed upon the proposed

26  Settlement that Plaintiffs now presenting to the Court for preliminary approval. The Settlement

27  covers approximately 225 non-exempt field workers who worked for Defendants for the relatively

28  brief time from April 30, 2015 to June 5, 2015 picking and packing blueberries *Id*. at ¶37.

**III.    SUMMARY OF SETTLEMENT TERMS**

    **A.    The Gross Settlement Payment**

        Under the Settlement, Defendants will make a Settlement payment of $185,000 within ten days after the Settlement becomes final. Settlement § III.A. This amount is non-reversionary and any late payment will incur interest at the statutory rate for judgment for wages under California law. *Id.*

        The Settlement provides for: payments to the named Plaintiff (subject to court approval), in addition to her Settlement Share of up to $10,000 as compensation for her role as Class Representative (Settlement § III.C.1.); payments to Class Counsel of up to 33.33% of the gross settlement ($61,661) for their reasonable attorneys' fees, as well as an additional reasonable amount up to $10,000 for their litigation expenses incurred in investigating the case, prosecuting the case, preparing for and negotiating at the mediations and settlement conference, conducting document and damage scanning, printing, and analysis in this case, documenting the Settlement, securing approval of the Settlement, and related tasks (*id.*, § III.C.2.); a $5,000 payment to the LWDA as the LWDA's share of the settlement of civil penalties under this agreement (*id.*, § III.C.3.); and payment of up to $10,000 for the Settlement Administrator's reasonable fees and expenses (*id.*, § III.C.3). Full justification for all of the above payments will be presented at final approval.

    **B.    Payment of Settlement Shares**

        After the other amounts are deducted from the Maximum Settlement Amount, the "Net Settlement Amount" will be distributed to all Claimants on a *pro rata* basis as follows:

> Calculation.  The Settlement Share for each Claimant will be based on (a) that Claimant's total number of pay periods in which claimant was employed by Cal West AG Services, Inc. at Marthedal Farms during the Class Period (b) divided by the aggregate number of pay periods for Defendants of all Participating Class Members between September 30, 2011 and the date of the preliminary approval (c) multiplied by the value of the Net Settlement Amount

Settlement, § III.E.1.

        Plaintiff's counsel have reviewed this method of distribution and determined that, on the whole, it serves the purpose of providing a simple and readily determinable method for

4

distribution, while also allowing for a distribution that corresponds closely to the alleged damages and likely recoveries, which are based upon various theories of liability. Mallison Decl., ¶ 44. Plaintiff's counsel considered other, more complicated methods, but determined that although these methods have some merit, that they were not without controversy and would likely lead to myriad objections regarding their formulation and implementation. *Id.* The formula employed in the Settlement is commonly used in wage and hour cases, and is appropriate in this case, where most workers experience the same working conditions and have similar claims roughly correlating with the number of hours that they worked. *Id.* Further, although there might be marginally better theoretical methods for calculating allocations amongst class members, the costs of obtaining and processing the information necessary to make such calculations would likely outweigh any benefits of using a more complex calculation method. The above method is simple, efficient, and uncontroversial and should be approved by the Court. *Id.*

### C.   <u>Distribution of Uncashed Checks</u>

The parties have agreed that follow-up on and redistribution of uncashed checks will proceed using the following method:

> A Claimant must cash his or her Settlement Share check within six (6) months after it is mailed to him or her. If a check is returned to the Settlement Administrator, the Settlement Administrator will make all reasonable efforts to re-mail it to the Claimant at his or her correct address.  If Claimant's Settlement Share check is not cashed within three (3) months after its last mailing to the Claimant, the Settlement Administrator will send the Claimant a letter informing him or her that unless the check is cashed in the next three (3) months, it will expire and become non-negotiable, and offer to replace the check if it was lost or misplaced but not cashed.  If the check remains uncashed by the expiration of the three-month period after this notice, the check proceeds will be paid to the California Rural Legal Assistance on a Cy Pres basis and the Claimant nevertheless will remain bound by the Settlement.

Settlement, § III.G.7.

The Ninth Circuit has repeatedly provided guidance with regards to the proper selection of *cy pres* beneficiaries. To ensure that the settlement retains some connection to the plaintiff class and the underlying claims, a *cy pres* award must qualify as 'the best distribution to giving the funds directly to class members." *Dennis v. Kellogg Company*, 697 F.3d 858, 865 (9th Cir. 2012) (quoting *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990). "To avoid the 'many nascent dangers to the fairness of the distribution process,' we require

5

that there by 'a driving nexus between the plaintiff class and the *cy pres* beneficiaries'" *Dennis*, *supra*, 697 F.3d at 965 (quoting *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011). To ensure this, the Ninth Circuit requires that:

> … a *cy pres* award must be "guided by 1) the objectives of the underlying statute(s) and 2) the interest of the silent class members" … and must not benefit a group 'too remote from the plaintiff class. *Dennis v. Kellogg* at 865 (quoting *Six Mexican Workers*, 904 F.2d at 1308).

Here, the proposed *cy pres* recipient, California Rural Legal Assistance ("CLRA"), clearly satisfies the objectives of the underlying statutes and the interest of silent class members. CLRA provides legal assistance in wage and hour disputes to low income workers in rural areas of California, in addition to myriad other services.

### D.      Scope of the Class Member Releases

The scope of the release by all Participating Class Members (all Class Members other than those who elect not to participate in the Settlement) tracks the scope of Plaintiff's allegations and is not broader than the wage-and-hour claims at issue in the complaint.  *See* Settlement, § III.H.2.

### E.      Objections and Opt-Out Process

Any Class Member who so wishes may object to or comment on the Settlement; or elect not to participate in the Settlement. *See* Settlement, § III.G.4. The Class Notice fully explains the objection/comment and exclusion procedures. *See* Ex. 2 to Mallison Decl.

### F.      Class Representative Payments; Class Counsel Attorneys' Fees Payment and Class Counsel Litigation Expenses Payment

By a motion to be filed prior to the Final Approval Hearing, Plaintiff and her counsel will seek a Class Representative Payment of up to $10,000, in addition to her Settlement Share, in compensation for her service as Class Representative; and an award to Class Counsel of a Class Counsel Attorneys' Fees Payment of not more than 33.33% of the Gross Settlement Amount, in addition to a Class Counsel Litigation Expenses Payment of not more than $10,000. Settlement, § III.C.2. The exact amounts requested will be contained in a motion for final approval.

1    IV.      **THE MOTION FOR PRELIMINARY APPROVAL SHOULD BE GRANTED**

2         A.      **Preliminary Approval of the Settlement Is Appropriate**

3         The law favors settlement, particularly in class actions and other complex cases where

4    substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation.

5    See 4 *Newberg on Class Actions* 4th (2002) ("*Newberg*"), § 11.41 (and cases cited therein); *Class*

6    *Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.*,

7    529 F.2d 943, 950 (9th Cir. 1976). A class action, however, may not be dismissed, compromised,

8    or settled without the approval of the court. Fed. R. Civ. P. 23(e).

9         Judicial proceedings under Rule 23, Federal Rules of Civil Procedure, have led to defined

10   procedures and specific criteria for settlement approval in class action settlements, described in the

11   *Manual for Complex Litigation, Third* (Fed. Judicial Center 1995) ("*Manual*") § 30.41. The

12   *Manual*'s settlement approval procedure describes three distinct steps:

13        (1)      Preliminary approval of the proposed settlement at an informal hearing;

14        (2)      Dissemination of mailed and/or published notice of the settlement to all
                   affected Class Members; and

15

16        (3)      A "formal fairness hearing," or final settlement approval hearing, at which
                   Class Members may be heard regarding the settlement, and at which
17                 evidence and argument concerning the fairness, adequacy, and
                   reasonableness of the settlement may be presented.

18

19   *Id.*, § 30.41. The procedure, commonly used by federal courts and endorsed by the leading class

20   action commentator, Professor Herbert Newberg, safeguards class members' procedural due

21   process rights and enables the Court to fulfill its role as the guardian of class interests. *See*

     *Newberg*, § 11.22 *et seq.*
22

23        The decision to approve or reject a proposed settlement is committed to the trial court's

24   sound discretion; a court's decision to approve a class action settlement may be reversed only upon

25   a strong showing of "clear abuse of discretion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026

26   (9th Cir. 1998); *City of Seattle*, 955 F.2d at 1276 (in context of class action settlement, appellate

27   court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the

28   agreement," and will reverse only upon strong showing of abuse of discretion).

1    The purpose of the preliminary evaluation of class action settlements is to determine only

2  whether the proposed settlement is within the range of possible approval, and thus whether notice

3  to the class of the settlement terms and conditions and the scheduling of a formal fairness hearing

4  is worthwhile. To grant preliminary approval of this class action settlement, the court need only

5  find that the settlement falls within the range of possible final approval, also described as "the

6  range of reasonableness." *See, e.g., North County Contractor's Assn., Inc. v. Touchstone Ins. Svcs.*,

7  27 Cal. App.4th 1085, 1089-90 (1994); *In re Traffic Exec. Ass'n*, 627 F.2d 631, 633-34 (2d Cir.

8  1980); *see also* 4 *Newberg*, § 11.25. In sum, preliminary approval of a settlement and notice to the

9  proposed class is appropriate: "[i]f [1] the proposed settlement appears to be the product of serious,

10  informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant

11  preferential treatment to class representatives or segments of the class, and [4] falls with the range

12  of possible approval…" *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal.

13  2007).

14    The Settlement proposed by the parties meets this test.

15    1.    The Settlement Was the Product of Informed, Non-Collusive Negotiations

16    The Settlement was reached after informed, arm's length negotiations between the parties

17  with the help of an accomplished mediator. Mallison Decl., ¶ 36. Both parties conducted extensive

18  investigation and discovery allowing them to assess the strengths and weaknesses of the case. *Id.*,

19  ¶¶ 33-35. For their part, Plaintiff's counsel reviewed payroll and timekeeping documents and data

20  prior to and during the settlement negotiations. *Id.*, ¶ 34. The Settlement agreement was reached

21  after a full day of mediation with Steven Vartabedian, retired Associate Justice for the California

22  Court of Appeals for the Fifth Circuit in which the parties zealously detailed their respective

23  positions. *Id.*, ¶ 36. As such, the Settlement is the product of non-collusive negotiations.

24    2.    The Proposed Settlement Has No "Obvious Deficiencies."

25    The Settlement is non-reversionary and substantial. The Settlement provides for a payment

26  of $185,000 by Defendants, which is, by any account, a significant amount given the Settlement

27  covers approximately 225 non-exempt field workers who worked for Defendants for the relatively

28  brief time from April 30, 2015 to June 5, 2015 picking and packing blueberries. Mallison Decl.

¶37. The Settlement Share for each Claimant will be based on total number of pay periods in which claimant was employed by Cal West AG Services, Inc. at Marthedal Farms during the Class Period (b) divided by the aggregate number of pay periods for Defendants of all Participating Class Members between September 30, 2011 and the date of the preliminary approval (c) multiplied by the value of the Net Settlement Amount. Settlement, § III.E.1. Plaintiff contends (and Defendants do not contest) that both the Class Representative Payment and the Class Counsel Attorneys' Fees Payment are appropriate, and regardless they are subject to court approval at the Final Approval hearing. *Id.*, § III.C.1-2.

### 3.   The Settlement Falls Within the Range of Possible Approval

The Settlement presented herein falls well within the range of possible approval. To evaluate this criterion, which focuses on "substantive fairness and adequacy," "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080. Following review of Defendants' payroll and timekeeping documents and data, Plaintiff's counsel determined that the value of class wage claims with a substantial likelihood of prevailing to be approximately $1,200,000 with more than $1,000,000 of that figure comprised on derivative penalties (Labor Code §§ 226, 226.3, 203, 256, 210). Mallison Decl., ¶ 35. The Settlement should be approved because it confers a substantial benefit on Class Members, while proceeding with litigation would impose significant risk with no guarantee of increased benefits. *Id.*, ¶¶ 47-53.

#### a)   Liability Is Contested and the Settlement Provides Class Members Substantial Monetary Relief

Plaintiff's counsel conducted a thorough investigation into the facts of this class action and diligently pursued an investigation of Class Members' claims against Defendants. Mallison Decl., ¶¶ 33-35. Plaintiffs' counsel interviewed numerous witnesses, and thoroughly reviewed a database of timekeeping information and thousands of pages of timekeeping and payroll documents to create a reliable damage model detailing the number of possible violations at issue. *Id.*

For its part, Defendants contest liability in this action, are represented by zealous counsel, and is prepared to vigorously defend against these claims if the action is not settled. Mallison Decl., ¶¶ 48, 49. If the litigation proceeds, Defendants may face significant liability. *Id.* However,

9

while Plaintiff is confident of a favorable outcome, there is substantial risk that legal developments could seriously diminish the value of Plaintiffs' claims. *Id.*, ¶ 52.

In light of these risks for both parties, the Settlement provides Plaintiff and the Class with a significant recovery for a relatively short amount of time,  while mitigating Defendants' risk if the matter were to proceed. Mallison Decl., ¶¶ 47-53. As such, the Settlement is fair, reasonable, adequate, and is in the best interest of the Settlement Class in light of all known facts and circumstances, including the risk of the significant delay. *Id.* The Settlement is also in the best interest of judicial efficiency in this case, as it obviously eliminates a lengthy and intense class action lawsuit from this court's calendar. *Id.*

b)      <u>The Class Release Is Appropriate Given Plaintiffs' Claims.</u>

As described above, as part of the Settlement, the Class Members will be deemed to have released all claims relating to the facts pled in the complaint, with the exception that those Class Members who complete and timely submit an Election Not to Participate form to the Settlement Administrator. *See* Settlement, §§ III.H.2., III.G.4.b. These released claims appropriately track the breadth of Plaintiff's allegations in the action and the Settlement does not release unrelated claims that class members may have against Defendants. *Id.*, § III.H.2. Regardless, Class Members have the right to opt-out of the Settlement altogether by following the Election not to Participate procedures provided for in the notice. *Id.*, § III.G.4.b.

**B.      <u>Conditional Certification of a Settlement Class Is Appropriate</u>**

Pursuant to Rule 23(c)(1), Federal Rules of Civil Procedure, the Court may "make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000) (citing Fed. R. Civ. P. 23(c)(1)). Conditional approval of the class is appropriate where the plaintiff demonstrates (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation; and one of the three requirements of Rule 23(b) also is met. Conditional certification of the settlement class is appropriate here as all the factors Rule 23 requirements are met.

10

### 1. The Numerosity Requirement Is Met

The numerosity requirement is met if the class is so large that joinder of all members would be impracticable. *Gay v. Waiters' & Dairy Lunchmen's Union*, 489 F. Supp. 282 (N.D. Cal. 1980), *aff'd*, 694 F.2d 531 (9th Cir. 1982). No specified number of members of class is needed to maintain class action. *Cypress v. Newport News General and Nonsectarian Hospital Ass'n*, 375 F.2d 648 (4th Cir. 1967); *see also Pottinger v. City of Miami*, 720 F.Supp. 95 (S.D. Fla. July 21, 1989) *remanded on other grounds* 40 F.3d 1155; *McNeill v. New York City Housing Authority*, 719 F.Supp. 233 (S.D.N.Y. 1989); *Ellender v. Schweiker*, 550 F. Supp. 1348 (S.D.N.Y. 1982); *Gordon v. Forsyth Cty. Hosp. Auth., Inc.*, 409 F. Supp. 708, 711 (M.D.N.C. 1975), *aff'd in part, vacated in part*, 544 F.2d 748; *Susquehanna Tp. v. H and M, Inc.*, 98 F.R.D. 658 (M.D.Pa. 1983). However, numerosity is generally presumed for purposes of class action certification when the proposed class would have at least 40 members. *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168 (S.D.N.Y. 2008).

Here, the count of approximately 225 similarly situated Class Members satisfies the numerosity requirement. Mallison Decl. ¶2.

### 2. The Commonality Requirement Is Met

Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement has been construed permissively; not all questions of law and fact need to be common. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Here, Plaintiff alleges that Plaintiff's claims involve common questions of both fact and law exist regarding Defendants' alleged failure to abide by federal and state wage and hour law, and Defendants do not dispute this for the purposes of the Settlement. Mallison Decl., ¶18.

### 3. The Typicality Requirement Is Met

"Rule 23(a)(3) requires that the claims of the named parties be typical of the claims of the members of the class." *Fry*, *supra*, 198 F.R.D. at 468. "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, *supra*, 150 F.3d at 1020. Plaintiff contends, and for purposes of the Settlement Defendants do not dispute, that Plaintiff's respective claims are essentially identical to all other non-exempt field workers who worked for Defendants

1   for the relatively brief time from April 30, 2015 to June 5, 2015 picking and packing blueberries.

2   Mallison Decl. ¶ 2.

3                   4.      Adequacy of Representation

4          To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiffs must show

5   that: "(1) that the putative named plaintiff has the ability and the incentive to represent the claims

6   of the class vigorously, (2) that he or she has obtained adequate counsel, and (3) that there is no

7   conflict between the individual's claims and those asserted on behalf of the class." *Fry*, *supra*, 198

8   F.R.D. at 469. The adequacy of representation requirement is met here because Plaintiffs have the

9   same interests as the remaining members of the Settlement Class, there is no conflict between the

10  named Plaintiffs' claims and those of the other Class Members, and Plaintiffs are represented by

11  experienced and competent counsel who have experience in litigating more than a hundred wage-

12  and-hour class action and representative cases.  Mallison Decl. ¶¶ 3-5, 54.

13                  5.      Class Certification Is Proper Under Rule 23(b)(3)

14         In addition to demonstrating the four prerequisites of Rule 23(a), class certification requires

15  a showing that certification is proper under one of the three requirements of Rule 23(b). Here, the

16  parties agree for purposes of the Settlement only that certification of the Class is appropriate under

17  Rule 23(b)(3) because "questions of law or fact common to the members of the class predominate

18  over any questions affecting only individual members, and…a class action is superior to other

19  available methods for the fair adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

20  **C.      The Proposed Notice, Claim Form, Election Not to Participate Form, and Notice Plan Are Fair and Adequate**

21

22         "Adequate notice is critical to court approval of a class settlement under Rule 23(e)."

23  *Hanlon*, *supra*, 150 F.3d at 1025. A class action settlement notice "is satisfactory if it 'generally

24  describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

25  investigate and to come forward and be heard.'" *Churchill Village, LLC v. General Electric*, 361

26  F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. U.S.*, 623 F.2d 1338, 1352 (9th Cir. 1980).

27         Here, the proposed Class Notice (Ex. 2 to the Mallison Decl. filed herewith) and the manner

28  of notice is "the best notice practicable," as required under Rule 23(c)(2)(B). All Class Members

    can be identified and the Class Notice, the Claim Form, and the Election Not to Participate in

                                                    12

Settlement Form will be mailed directly to each Class Member. *See* Settlement, § III.G.2. The Class Notice adequately informs Class Members of the nature of the litigation, the essential terms of the Settlement, how to object to, comment on, or elect not to participate in the Settlement. Ex. 2 to Mallison Decl. Further, the Class Notice identifies Class Counsel, specifies the amounts of the Class Representative Payment, Class Counsel Attorneys' Fees Payment, and Class Counsel Litigation Expenses Payment that Plaintiffs and Class Counsel will seek, and explains how to obtain additional information regarding the action and the Settlement. *Id*.

Specifically, using "best efforts to provide it as soon as possible, and in no event later than ten (10) calendar days (or the first business day after this deadline, if the deadline falls on a weekend or holiday) after the Court enters its order granting Preliminary Approval of the Settlement, Plaintiff's counsel will provide to the Settlement Administrator and Defendants' counsel an electronic database or spreadsheet(s) in native electronic spreadsheet format containing for each Class Member his, or her, available Class Data." *See* Settlement, § III.G.2.a. The Class Notice and other materials will be mailed by the Settlement Administrator within ten (10) days following Defendants' delivery of the Class Members' data. *See id.*, § III.G.2.b. The Settlement Administrator will attempt to locate any Class Members whose Notices are returned as undeliverable. *Id*. § III.G.2.b. Not later than the date by which the Plaintiff files the final approval hearing, the Settlement Administrator will submit a declaration describing efforts made to locate all Class Members. *See id.*, § III.G.2.f. In sum, the procedures set forth in the Settlement provide the best possible notice to the Class Members.

### D.    Simipluris Should Be Appointed the Settlement Administrator

The parties have agreed upon and propose that the Court appoint Simpluris to serve as the Settlement Administrator. Simpluris is very experienced in administering wage and hour class action settlements, and has submitted a not-to-exceed bid of $9,000 to administer the settlement. Ex. 3 to Mallison Decl. For purposes of the Class Notice filed herewith, Plaintiffs' counsel has estimated the costs to be incurred by the claims administration at $10,000 to account for any unforeseen additional expenses which may be necessary and/or ordered by the Court. Mallison Decl., ¶ 58. Plaintiff's counsel will provide an updated Settlement Administration expense

estimate at the time it files the Motion for Final Approval of Class Settlement, Attorneys' Fees and Administration Costs. *Id.*

### E. Proposed Schedule

Plaintiffs propose the following schedule for approval of the Settlement:

| Date | Event |
|---|---|
| 5/4/18 | Preliminary Approval hearing (all dates that follow assume Preliminary Approval is granted on this date) |
| 5/14/18 | Plaintiff's counsel to provide to Settlement Administrator with a spreadsheet containing Class Member contact information and data necessary to calculate settlement shares (10 days after Preliminary Approval) |
| 5/24/18 | Settlement Administrator to mail Notice Packets to all Class Members (10 days after receiving Class Member information) |
| 7/9/18 | Last day for Class Members to file with the Court and serve upon counsel for the parties comments or objections regarding the Settlement (45 days after Settlement Administrator mails Notice Packets to all Class Members). (July, 8, 2018 is a Sunday.) |
| 7/9/18 | Last day for Class Members to mail valid Elections Not to Participate in Settlement and to mail Claim Form containing corrections (45 days after Settlement Administrator mails Notice Packets to all Class Members) |
| 7/19/18 | Date by which Settlement Administrator will provide Parties with a list of all Class Members who submitted timely and valid Elections Not to Participate Forms |
| _____ | Date by which Class Counsel will submit its motion for final approval of settlement, class representative fees and class counsel's attorneys' fees and expenses |
| _____ | Proposed Final Approval and Fairness Hearing |

## V. CONCLUSION

For the reasons set forth above, Plaintiff Carmela Mora and Defendants Jon & Eric Marthedal, respectfully request that the Court grant this motion in its entirety and enter an order: (1) conditionally certifying the Settlement Class; (2) granting preliminary approval of the

14

Settlement; (3) appointing Plaintiff Carmela Mora as the Class Representative; (4) appointing Mallison & Martinez and Martinez, Aguilasocho & Lynch as Class Counsel; (5) approving and directing the mailing of the Class Notice and related materials; (6) appointing Simpluris as the Settlement Administrator; (7) appointing the California Rural Legal Assistance as *Cy Pres* beneficiary; and (8) scheduling the Final Approval Hearing at a date available and convenient for the Court.

Respectfully submitted,

Dated:  April 5, 2018.

STAN S. MALLISON
HECTOR R. MARTINEZ
MARCO A. PALAU
JOSEPH D. SUTTON
ERIC S. TRABUCCO
MALLISON & MARTINEZ

By:  ___*/s/ Joseph D. Sutton*_____
Joseph D. Sutton
Attorneys for Plaintiff
Carmela Mora

Memorandum ISO Motion for Preliminary Approval of Class Settlement          *Case No.* 2:16-cv-02120