1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                        EASTERN DISTRICT OF CALIFORNIA

10

11

12   CARMELA MORA, on behalf of herself and       Case No.: 1:15-cv-1490-LJO-EPG
     all others similarly situated,
                                                  FINDINGS AND RECOMMENDATIONS
13              Plaintiffs,                        REGARDING MOTION FOR
                                                   PRELIMINARY APPROVAL OF CLASS
14         v.                                      ACTION SETTLEMENT, CONDITIONAL
                                                   CERTIFICATION OF SETTLEMENT
15   CAL WEST AG SERVICES, INC., et al.,           CLASS, APPROVAL OF CLASS NOTICE
                                                   PACKAGE, APPROVAL OF PLAINTIFFS'
16              Defendants.                         PAYMENTS, APPOINTMENT OF CLASS
                                                   COUNSEL AND SETTLEMENT
17                                                 ADMINISTRATOR, AND SETTING OF
                                                   FINAL APPROVAL HEARING
18
                                                  (ECF No. 71)
19

20   **I.      Introduction**

21         Plaintiff Carmela Mora's Motion for Preliminary Approval of Class Settlement, Conditional

22   Certification of Settlement Class, Approval of Class Notice Package, Approval of Class Notice

23   Package, Approval of Plaintiffs' Payments, Appointment of Class Counsel and Settlement

24   Administrator, and Setting of Final Approval Hearing ("Motion for Preliminary Approval") (ECF

25   No. 71) came before the Court for hearing on May 3, 2018. Attorney Joseph Sutton appeared on

26   behalf of Plaintiffs; attorney Gerardo Hernandez, Jr., appeared on behalf of Defendant Cal West

27   Ag Services, Inc. ("Cal West Ag"); and attorney Justin Campagne appeared on behalf of

28   Defendants Eric Marthedal and Jon Marthedal ("Marthedal Defendants"). The proposed

                                                  1

Settlement is between Plaintiffs and the Marthedal Defendants; Defendant Cal West Ag is not a party to the Settlement (ECF No. 71-3). For the reasons set forth below, the Court recommends that Plaintiff's unopposed motion for preliminary approval be granted, subject to the findings and recommendations set forth herein, including a recommendation that the settling parties be required to revise the Notice of Class Action Settlement and the Claim Form.

## II. Background

On September 30, 2015, Plaintiff Carmela Mora, as an individual and on behalf of herself and all others similarly situated, filed suit against Defendants Cal West Ag Services, Inc., Jon Marthedal, and Eric Marthedal alleging the following wage and hour claims for the proposed class:

1. Violations of the Agricultural Worker Protection Act ("AWPA") (29 U.S.C. § 1801, et seq.);
2. Failure to Pay Minimum Wages (Cal. Labor Code §§ 1194(a), 1194.2, 1197; California Industrial Welfare Commission ("IWC") Wage Orders 8, 13, 14);
3. Failure to Provide Timely Paid Rest Periods or Compensation in Lieu Thereof (Cal. Labor Code §§ 226.7, 512; IWC Wage Orders 8, 13, 14);
4. Failure to Timely Pay Wages Due at Termination (Cal. Labor Code §§ 201, 202, 203);
5. Knowing and Intentional Failure to Comply with Itemized Employee Wage Statement Provisions (Cal. Labor Code §§ 229(B), 1174, 1175);
6. Violation of Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 et seq.); and
7. Enforcement of the Private Attorney General Act ("PAGA") (Cal. Labor Code § 2698).

(ECF No. 1.)

On January 26, 2016, Defendant Jon Marthedal filed an answer and counterclaim against Defendant Cal West Ag (ECF No. 9). On February 1, 2016, Cal West Ag filed its answer to the Complaint (ECF No. 10), and on February 19, 2016, Cal West Ag filed its answer to Jon Marthedal's counterclaim and a counterclaim against Jon Marthedal (ECF No. 13). On February 19, 2016, Defendant Eric Marthedal filed his answer to the Complaint (ECF No. 14). On March 10, 2016, Jon Marthedal filed his answer to Cal West Ag's counterclaim (ECF No. 19).

The parties subsequently participated in an all-day mediation before mediator Steven Vartabedin, retired Associate Justice for the California Court of Appeals for the Fifth Circuit. Plaintiff and the Marthedal Defendants agreed upon a proposed settlement (the "Settlement") of

the class action. The proposed Settlement Agreement was executed by proposed class representative Carmela Mora on March 22, 2018, and by the Marthedal Defendants on April 2, 2018. (ECF No. 71-3.) The Settlement resolves all class claims against the Marthedal Defendants; Cal West Ag is not a party to the Settlement and the Settlement does not affect any claims the Plaintiffs or the Marthedal Defendants may have against Cal West Ag. (*See id.*)

The Settlement covers all Cal West Ag's non-exempt workers who were employed by and/or performed work for the Marthedal Defendants as agricultural workers at Marthedal Farms in California between September 30, 2011, and the date of preliminary approval of the Settlement. (ECF No. 71-3 at 1.) The core damages are alleged to involve approximately 225 non-exempt field workers who worked for the Defendants picking and packing blueberries during the period April 30, 2015, to June 5, 2015. (ECF No. 71-1 at 8; ECF No. 71-2 at 14-15; ECF No. 79 at 2.)

The Settlement amount is $185,000, and is proposed to be distributed as follows: (1) payments to the named Plaintiff in compensation for her role as class representative; (2) payments to class counsel for reasonable attorneys' fees and costs; (3) payment to the California Labor and Workforce Development Agency ("LWDA") as the LWDA's share of the settlement of civil penalties under the agreement; (4) payment to the settlement administrator for its reasonable fees and expenses; and (5) distribution of the net settlement amount to all class members who submit a timely and valid claim form (ECF No. 71-1 at 6; ECF No. 71-3 at 5-8).

Under the Settlement Agreement, the Marthedal Defendants will pay the $185,000 into a settlement fund to be administered by a settlement administrator proposed by the parties and approved by the Court. (ECF No. 71-3 at 5.) The $185,000 settlement amount is inclusive of payments to the proposed class and to the class representative, to the LWDA, for Plaintiff's and class counsel's attorneys' fees and costs, and for the costs of administering the settlement. (*Id.*) The Settlement Agreement provides that Plaintiffs' counsel will file a separate application for fees and costs, seeking an award of fees of not more than 33.33% of the gross settlement amount, and costs not to exceed $10,000, and that Defendants will not oppose such application. (ECF No. 71-3 at 6.) The proposed class representative, Plaintiff Carmela Mora, will apply to the Court for an award of up to $10,000 for her class representation, in addition to whatever payment, if any,

she may be otherwise entitled to from the settlement fund as a settlement class member. (*Id.*) The costs of claims administration will be paid out of the gross settlement fund as approved by the Court, with every effort undertaken to minimize this cost. (*Id.* at 7.) The parties will also apply to the Court for a payment to the LWDA of up to $5,000 out of the gross settlement amount. (*Id.* at 6.) The settlement is non-reversionary. (*Id.* at 5.)

On April 6, 2018, Plaintiff filed the instant unopposed motion for preliminary approval of the settlement. (ECF No. 71.) Plaintiff seeks an order (1) conditionally certifying the proposed settlement class; (2) preliminarily approving the Settlement; (3) approving the Settlement notice package; (4) approving payments the settlement class; (5) appointing Plaintiff Mora as class representative and approving Plaintiff's counsel as Class Counsel; (6) appointing a settlement administrator; and (7) setting a fairness hearing for final approval of the Settlement.

On May 3, 2018, the Court held a hearing on the motion for preliminary approval. (*See* ECF No. 74.) During the hearing, the Court directed the settling parties to submit a revised proposed class settlement notice fixing a typographical error; and potentially including additional information regarding which Defendants are participating in the settlement and paying the settlement amount. The Court also informed the parties that the objection provision in the proposed notice was inconsistent with the Court's policy, and requested that the settling parties revise the objection provision to accurately reflect Court's policy that anyone can raise objections at the fairness hearing for final approval of the settlement, but that the Court retains discretion to decline to consider an objection that has not been timely submitted in writing. (*See* ECF No. 75.) Following the hearing, Plaintiff submitted a revised proposed Notice of Class Action Settlement (ECF No. 76). On May 18, 2018, the Marthedal Defendants filed a Supplemental Memorandum Regarding Adequate Disclosure of Source of Payments to the Proposed Class (ECF No. 77).

### III. LEGAL STANDARD FOR CLASS ACTION CERTIFICATION AND SETTLEMENT

A court tasked with determining whether to approve a proposed class action settlement will almost always be required to engage in a "difficult balancing act." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015). "On the one hand, … 'there is a strong judicial policy that favors

settlements, particularly where complex class action litigation is concerned.'" *Id.* (citations omitted). "But on the other hand, 'settlement class actions present unique due process concerns for absent class members,' and the district court has a fiduciary duty to look after the interests of those absent class members." *Id.* (citations omitted). "The dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court-designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e)." *Hanlon*, 150 F.3d at 1026.

"To guard against this potential for class action abuse, Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(e)(2); *Staton v. Boeing Co.*, 327 F.3d 938, 972 n.22 (9th Cir. 2003) (court's role is to police the "inherent tensions among class representation, defendant's interests in minimizing the cost of the total settlement package, and class counsel's interest in fees").

The Rule 23 class settlement process generally proceeds in two phases. In the first phase, the court conditionally certifies the class, conducts a preliminary determination of the fairness of the settlement (subject to a more stringent final review), and approves the notice of class action settlement to be provided to the class. *Ontiveros v. Zamora*, 303 F.R.D. 356, 363 (E.D. Cal. 2014). The purpose of this preliminary review is to ensure that an appropriate class exists and that the agreement is non-collusive, without obvious deficiencies, and within the range of possible approval as to that class. *See True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1062 (C.D. Cal. 2010); Newberg on Class Actions § 13:13 (5th ed. 2014).

In the second phase, the court holds a full fairness hearing where class members may present objections to class certification, or to the fairness of the settlement agreement. *Ontiveros*, 303 F.R.D. at 363 (citing *Diaz v. Trust Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989)). Following the fairness hearing, taking into account all of the information before the court, the court must confirm that class certification is appropriate, and that the settlement is fair, reasonable, and adequate. *See Valdez v. Neil Jones Food Co.*, 2015 WL 6697926, at *8 (E.D. Cal.

Nov. 2, 2015); *Miller v. CEVA Logistics USA, Inc.*, 2015 WL 4730176, at *3 (E.D. Cal. Aug. 10, 2015).

## IV.  DISCUSSION

When the parties have entered into a settlement agreement before the district court certifies the class, the court "must pay 'undiluted, even heightened, attention' to class certification requirements. . . . " *Staton*, 327 F.3d at 952–53 (citations omitted). For class certification, the classes and sub-classes "must meet the four threshold requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation." *Leyva v. Medina Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013) (citing Fed. R. Civ. P. 23(a); *Hanlon*, 150 F.3d at 1019. The proposed class must also satisfy the requirements of Rule 23(b), which defines the three different types of classes allowed. Fed. R. Civ. P. 23(b); *Leyva*, 716 F.3d at 512. The plaintiff bears the burden of demonstrating that the requirements of Rule 23 have been satisfied as to the proposed class. *See Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010). "A court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until [those requirements] have been met." Advisory Committee 2003 Note on Fed. R. Civ. P. 23(c)(1). As discussed below, the requirements for class certification in Rule 23(a) and (b) are satisfied here. *See Leyva*, 716 F.3d at 512.

### A.  Rule 23(a) Requirements

#### 1.  Numerosity

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 330 (1980). Courts in the Ninth Circuit have found the requirement satisfied when the class is composed of as few as thirty-nine members. *See Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (citing *Jordan v. L.A. County*, 669 F.2d 1311, 1319 (9th Cir. 1982) (noting that class sizes of thirty-nine, sixty-four, and seventy-one are sufficient to satisfy the numerosity requirement), *vacated on other grounds*, 459 U.S. 810,

103 (1982)).

Here, the proposed class is defined as: "[A]ll Cal West AG Service Inc.'s nonexempt workers who were employed by and/or performed work for Defendants Jon and Eric Marthedal as agricultural workers at Marthedal Farms in California between September 30, 2011 and the date of preliminary approval." (ECF No. 71-3 at 1.) The settling parties represent that the core damages affect "approximately 225 non-exempt field workers who worked for Defendants for the relatively brief time from April 30, 2015, to June 5, 2015, picking and packing blueberries," but that the broader dates of working for Defendants between September 30, 211, and the date of preliminary approval, were used for the settlement class to provide for any claims outside the briefer period that may be discovered when the class data is produced. (ECF No. 79 at 2; *see* ECF Nos. 71-1 at 8, 71-2 at 2.)

The Court finds that Plaintiff has demonstrated that the numerosity requirements of Rule 23(a)(1) are satisfied.

## 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3)." *Hanlon*, 150 F.3d at 1019. "Indeed, Rule 23(a)(2) has been construed permissively." *Id.* "All questions of fact and law need not be common to satisfy the rule." *Id.* "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* To satisfy commonality, there must be a "common contention … of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A plaintiff can meet this burden by showing "[s]ignificant proof that an employer operated under a general policy" of harmful conduct if the conduct "manifested itself in hiring and promotion practices in the same general fashion . . . ." *Id.* at 353 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 159 n.15 (1982)).

Here, Plaintiff contends that the class's claims involve common questions of both fact and

law regarding Defendants' alleged failure to abide by federal and state wage and hour law. Plaintiff alleges that Defendants failed to pay class members the minimum wage; failed to provide class members with rest periods or compensation in lieu of rest periods; failed to provide class members with lawful full 30-minute meal periods; failed to provide class members with accurate, itemized wage statements; and failed to timely pay terminated class members their full pay at the time of termination. (ECF No. 71-2 at 9-13.) Plaintiff has demonstrated that the commonality requirements of Rule 23(a)(2) are satisfied. *See Wal-Mart*, 564 U.S. at 350.

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *see Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). This typicality requirement is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong*, 275 F.3d at 868; *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (claims are typical where named plaintiffs have the same claims as other members of the class and are not subject to unique defenses). While representative claims must be "reasonably co-extensive with those of absent class members," they "need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Here, Plaintiff contends that her claims are essentially identical to the claims for the expected claimants of non-exempt field workers who worked for Defendants "for the relatively brief time from April 30, 2015 to June 5, 2015 picking and packing blueberries." (ECF No. 71-1 at 16-17, 71-2 at 2.) According to the Complaint, Plaintiff was employed as a non-exempt employee directly or jointly by Defendants on land owned, leased, and/or operated by Defendant Cal West Ag and the Marthedal Defendants at various times during the class period of September 30, 2011, through September 30, 2015, and suffered from the same types of alleged violations of federal and state law by Defendants as suffered by the absent proposed class members. (ECF No. 1 at 4-5, 9, 13-25; *see* ECF No. 71-1 at 16 ("Plaintiff contends, and for purposes of the Settlement Defendants do not dispute, that Plaintiff's respective claims are essentially identical to all other

non-exempt field workers who worked for Defendants for the relatively brief time from April 30, 2015 to June 5, 2015 picking and packing blueberries.").) Plaintiff has demonstrated that the typicality requirement of Rule 23(a)(3) is satisfied because the claims of Plaintiff Mora, the class representative, is reasonably co-extensive with those of the absent proposed class members.

### 4. Adequacy of Representation

Before the Court can certify a class, the Court must be satisfied that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (citations omitted). "The proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000), *as amended* (June 19, 2000) (citations omitted).

Here, Plaintiff class representative, Mora, has submitted evidence that there is no conflict of interest between herself and the rest of the class. Mora possesses the same interests and injuries as the absent proposed class members, and has vigorously prosecuted this case on behalf of the class, as demonstrated by initiating this lawsuit, undertaking and affirmatively participating in the investigation of the issues in the case, discovery, and settlement negotiations. (ECF No. 71-2 at 9, 18; *see* ECF No. 1 at 4, 9, 13-24; ECF No. 71-1 at 16). The Court finds that Plaintiff class representative Mora satisfies the adequacy of representation requirement.

Next, Plaintiff class representative seeks appointment of her current counsel, Mallison & Martinez, as Class Counsel. The attorneys at this firm have prosecuted this action on behalf of Plaintiff and the proposed class since the commencement of the litigation; have extensive experience litigating class actions; and have been certified by numerous state and federal courts as adequate class counsel. (ECF No. 71-2 at 2-9.) The Court finds that Plaintiff class representative's current counsel of Mallison & Martinez satisfies the adequacy requirements with respect to the proposed class.

**B. Rule 23(b) Requirements**

Plaintiff seeks certification under Rule 23(b)(3), which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Amchem*, 521 U.S. at 615. The test of Rule 23(b)(3) is "far more demanding," than that of Rule 23(a). *Wolin v. Jaguar Land Rover N. Am.*, LLC, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Amchem*, 521 U.S. at 623–24).

1. Predominance

First, questions of law or fact common to class members must predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). This "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (quoting *Amchem*, 521 U.S. at 623). "This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3)." *Id.* ("In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues."). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1778 (2d ed.1986)).

Here, Plaintiff asserts that common questions to class members raised in this action predominate over any individualized questions. The Court agrees. The Complaint alleges that Defendants failed to pay class members the minimum wage; failed to provide class members with rest periods or compensation in lieu of rest periods; failed to provide class members with lawful full 30-minute meal periods; failed to provide class members with accurate, itemized wage statements; and failed to timely pay terminated class members their full pay at the time of termination. With the exception of the claim of failure to timely pay terminated class members, which may not apply to all class members, the claims in the Complaint appear to be ones that can

be resolved for all members of the class in a single adjudication. The Court finds that the predominance requirement is met here.

## 2. Superiority

Under Rule 23(b)(3), a class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The matters pertinent to this finding include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.; see Amchem*, 521 U.S. at 616.

Here, Plaintiff contends that a class action is superior to other available means for the fair and efficient adjudication of the claims. Defendants' alleged state wage and hour violations resulted in class-wide injuries and damages to an estimated 225 workers. Plaintiff's counsel estimates that, if all of these workers participate in the Settlement, each would be entitled to approximately $393. Thus, "[t]his case involves multiple claims for relatively small individual sums. . . . If plaintiffs cannot proceed as a class, some – perhaps most – will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover." *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands*, 244 F.3d 1152, 1163 (9th Cir. 2001); *see Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (class actions can provide a mechanism for plaintiffs to pool claims that "would be uneconomical to litigate individually"); Wright, Miller & Kane, *supra, at* § 1779 ("[I]f a comparative evaluation of other procedures reveals no other realistic possibilities, this [superiority] portion of Rule 23(b)(3) has been satisfied.").

Further, it is unlikely that individual members of the proposed class have any interest in individually controlling the prosecution or defense of individual actions. Lack of knowledge of the legal system and limited economic resources would also likely deprive most class members of the opportunity to pursue their claims outside of a class action. Class action treatment will allow these similarly situated workers to litigate their claims in the manner that is most efficient

and economical for the parties and the judicial system. There also does not appear to be any related pending litigation. Finally, there are no apparent difficulties likely to be encountered in managing this class action. The Court finds that the superiority requirement is met here.

### C. Preliminary Fairness Determination

Plaintiff requests preliminarily approval of the Settlement Agreement. (ECF No. 71-1 at 7-10; *see* 71-3 (Settlement Agreement).)  If a proposed settlement agreement will bind absent class members, the Court must find that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see also Bluetooth*, 654 F.3d at 946. When settlement occurs before class certification, the Court must also take extra care to ensure that "the settlement is not the product of collusion among the negotiating parties." *Bluetooth*, 654 F.3d at 946. Although the factors in a court's fairness assessment will vary from case to case, courts generally must weigh:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement."

*Id.* (citations omitted). "This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (citations omitted). Here, after balancing the relevant factors, the Court finds preliminary approval of the Settlement to be appropriate.

### 1. Nature of Settlement Negotiations; Extent of Discovery; Stage of Proceedings; Experience and Views of Counsel

Plaintiff represents that the Settlement was reached after informed, arm's length negotiations among the parties with the help of an accomplished mediator. (ECF No. 71-1 at 13.) The parties participated in an all-day mediation before mediator Steven Vartabedian, a retired Associate Justice for the California Court of Appeals for the Fifth Circuit. The parties apprised Mr. Vartabedian of the arguments and facts of the case through briefing and factual presentations, and agreed upon the Settlement. (ECF Nos. 71-1 at 8, 71-2 at 14, 71-3.) Each party was represented by experienced counsel and the class representative was involved in the discovery and investigation of the case and the all-day mediation. Counsel also had the benefit of extensive

investigation and discovery. (ECF Nos. 71-1 at 13, 71-2 at 13-14.) Plaintiff represents that her counsel has interviewed numerous witnesses and reviewed thousands of pages of documents and/or data from employees and Defendants, and conducted additional investigation and discovery regarding class certification and the merits of the class claims. (ECF No 71-2 at 13-14.) Plaintiff represents that the information obtained through her counsel's investigation and discovery demonstrated what occurred, in terms of hours and wages, at the workplace during the class period and allowed counsel to conduct the detailed analysis necessary to obtain the mediation results in the case. (*Id.*) Plaintiff estimates, based on this detailed analysis, the value of the wage claims with a substantial likelihood of prevailing, and based on the available data, to be $1,200,000, with more than $1,000,000 of that amount composed of derivative penalties under Cal. Labor Code §§ 226, 226.3, 203, 256, and 210. (ECF No. 71-2 at 14.)

Based on these representations, the Court finds that the settling parties agreed to the Settlement after conducting extensive investigation and discovery, which permitted counsel to properly evaluate the strengths and weaknesses of the case. The facts represented by Plaintiff, as well as the representations of counsel during the May 3, 2018, hearing in this matter, convinces the Court that the Settlement was the product of serious, informed, arm's-length negotiations by the parties. *See Riker v. Gibbons*, No. 3:08-CV-00115-LRH, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010) ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining.") (quoting 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11:42 (4th ed.2002)); *see also Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527–28 (C.D. Cal. 2004) ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." (citations omitted)).

## 2. Risks of Continued Litigation

Plaintiff explains in her brief that the proposed settlement represents a fair compromise, given the value of the class wage claims and the significant risk of continued litigation, which would provide no guarantee of increased benefits over the settlement amount. (ECF No. 71-1 at 14.) If the action were to continue without settlement, Plaintiff anticipates vigorous and lengthy

1    challenges to the merits of the class claims, and that while Plaintiff is confident of a favorable

2    outcome, there is a substantial risk that legal developments could seriously diminish the value of

3    the class claims. (ECF No. 71-1 at 15.)

4        Next, Plaintiff points out the settlement provides Plaintiff and the proposed class with a

5    significant recovery for a relatively short amount of time covered, while also mitigating

6    significant risk with no guarantee of increased benefit if the matter were to proceed. Plaintiff

7    contends that, based on these factors, the Settlement is fair, reasonable, adequate, and in the best

8    interest of the proposed class in light of all known facts and circumstances, including the risk of

9    substantial delay. (*Id.*) During the May 3, 2018, hearing in this matter, counsel indicated that the

10   potential risks if the case were to proceed include the difficulty of calculating damages, the

11   potential inaccuracy of wage statements, and the unsettled or unclear law relating to whether the

12   proposed class would be entitled to penalties on the failure to pay and inaccurate wage statement

13   claims. Plaintiff's counsel also indicated that, although there are methods to get around the

14   requirement for live testimony, the migratory nature of the proposed class members would make

15   it difficult to take the case to trial.

16       The Court finds that the risks and uncertainties of continued litigation weigh in favor of the

17   Settlement.

18                          3.   The Amount Offered in Settlement

19       In determining whether the amount offered in settlement is fair and reasonable, a court

20   compares the proposed settlement amount to the best possible outcome for the class. *See*

21   *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964 (9th Cir. 2009). "It is well-settled law that a

22   cash settlement amounting to only a fraction of the potential recovery does not per se render the

23   settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir.

24   2000), *as amended* (June 19, 2000) (citation omitted).

25       Here, the Settlement provides for $185,000 in total payment. The settlement share for each

26   claimant will be determined by the Settlement Administrator and will be based on (a) the

27   claimant's total number of pay periods in which the claimant was employed by Cal West at

28   Marthedal Farms during the class period, (b) divided by the aggregate number of pay periods for

Defendants of all participating class members between September 30, 2011, and the date of the preliminary approval, (c) multiplied by the value of the net settlement amount. (ECF No. 71-3 at 7-8.) Although Plaintiff did not, in her moving papers, provide an estimate of the monetary relief expected for each class member, during the May 3, 2018, hearing, Plaintiff's counsel represented that, assuming all of the estimated 225 potential class members participate in the settlement, each would receive, on average, approximately $393.

To receive a share of the settlement, a class member must sign and timely return to the Settlement Administrator a claim form. (ECF No. 71-3 at 1; *see* ECF No. 71-4 ("Claim Form").) A claim form is timely if submitted within ten business days of the "effective date," which is in turn defined as the later of (1) sixty-one (61) calendar days following entry of the Court's final order approving the settlement if no appeal challenging the approval of the settlement is filed; or (2) if an appeal is filed, thirty (30) days after the appeal has either been dismissed with no right to pursue similar remedies or relief, or has been resolved to uphold the final order approving the settlement. (ECF No. 71-3 at 2-3, 7.) A class member may elect not to participate in the settlement by submitting a valid and timely "Election not to Participate in Settlement." (*Id.* at 3, 11-12; *see* ECF No. 71-4 at 13 ("Opt-Out Form").)

Plaintiff's counsel has provided an estimate of $1,200,000 as the likely recovery at trial if they were to prevail, with $1,000,000 of that based on derivative penalties. As noted, the amount of the Settlement is $185,000.

Although the Settlement amount is only 15% of the $1,200,000 likely recovery estimate provided by Plaintiff's counsel, when the $1,000,000 in estimated derivative penalties is removed, the estimated likely recovery drops to $200,000, making the Settlement amount 92% of the estimated likely recovery. The Court finds this degree of recovery to be fair and reasonable in light of the uncertainties the proposed class faces in this case, including the uncertainties surrounding the recovery of penalties. *See, e.g., Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (finding a settlement amount constituting 25 to 35% of the amount of damages plaintiffs could have hoped to prove at trial fair and reasonable in light of the uncertainties involved in the case), *aff'd*, 331 F. App'x 452 (9th Cir.

2009).

**D. Fees, Costs, and Representative Service Payment**

1. <u>Attorney Fees and Costs</u>

Under the terms of the Settlement Agreement, Plaintiff's counsel will make a separate application to the Court for an award of attorneys' fees of not more than 33.33% of the gross settlement amount, plus any *pro* rata interest, and a maximum of $10,000 in costs. (ECF No. 71-3 at 6.)

When a negotiated class action settlement includes an award of attorneys' fees, the fee award must be evaluated in the overall context of the settlement. *Knisley v. Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir. 2002). At the same time, the court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941; *see also Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328–29 (9th Cir. 1999). Where, as here, fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). As a result, the district court must assume a fiduciary role for the class members in evaluating a request for an award of attorney fees from the common fund. *Id.*; *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009).

The Ninth Circuit has approved two methods for determining attorneys' fees in cases where the attorneys' fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted). The district court retains discretion in common fund cases to choose either method. *Id.*; *Vu v. Fashion Inst. of Design & Merch.*, No. CV 14-08822 SJO (EX), 2016 WL 6211308, at *5 (C.D. Cal. Mar. 22, 2016). Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).

Under the percentage of the fund method, the court may award class counsel a given

percentage of the common fund recovered for the class. *Id.* In the Ninth Circuit, a twenty-five percent award is the "benchmark" amount of attorneys' fees, but courts may adjust this figure upwards or downwards if the record shows "special circumstances justifying a departure." *Id.* (quoting *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). Percentage awards of between twenty and thirty percent are common. *See Vizcaino*, 290 F.3d at 1047; *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("This court's review of recent reported cases discloses that nearly all common fund awards range around 30% even after thorough application of either the lodestar or twelve-factor method."). Nonetheless, an explanation is necessary when the district court departs from the twenty-five percent benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000).

To assess whether the percentage requested is reasonable, courts may consider a number of factors, including:

> [T]he extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015) (internal quotation marks omitted). The Ninth Circuit has permitted courts to award attorneys' fees using this method "in lieu of the often more time-consuming task of calculating the lodestar." *Bluetooth*, 654 F.3d at 942.

Plaintiff brings various state law claims and, under California law, "[t]he primary method for establishing the amount of reasonable attorney fees is the lodestar method." *In re Vitamin Cases*, 110 Cal. App. 4th 1041, 1053 (2003) (internal quotation marks and citations omitted). The court determines the lodestar amount by multiplying a reasonable hourly rate by the number of hours reasonably spent litigating the case. *See Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 (9th Cir. 2001). The product of this computation, the "lodestar" amount, yields a presumptively reasonable fee. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). The Ninth Circuit has

recommended that district courts apply one method but cross-check the appropriateness of the amount by employing the other as well. *See Bluetooth*, 654 F.3d at 944.

Here, Plaintiff will seek maximum attorneys' fees of 33.33% of the gross settlement amount. (ECF No. 71-3 at 6.) Plaintiff's counsel will set forth the exact amounts requested in a motion for final approval, which will be filed prior to the opt-out/objection deadline. (*See* ECF Nos. 71-2 at 11, 71-3 at 2.) This fee amount is above the benchmark for this circuit. *See Bluetooth*, 654 F.3d at 947 (setting a 25% benchmark); *Staton*, 327 F.3d at 952 (same); *Six (6) Mexican Workers*, 904 F.2d at 1311 (same). However, the percentage is not unreasonable as an upper bound. As such, the Court approves the attorneys' fee request on a preliminary basis.

When the application for attorneys' fees is submitted, Plaintiff's counsel will be required to explain the "special circumstances justifying a departure" from the benchmark. *See Bluetooth*, 654 F.3d at 942. In connection with the final fairness hearing, the Court will cross check the requested amount with the lodestar amount based upon counsels' submission, and will determine whether the award of an above-benchmark percentage in fees is reasonable here. *See Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000) (noting that an explanation is necessary when the district court departs from the twenty-five percent benchmark).

2. Class Representative Service Payment

A district court may award incentive payments to named plaintiffs in class action cases. *Rodriguez*, 563 F.3d at 958–59. The purpose of incentive awards is to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaking in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* To justify an incentive award, a class representative must present "evidence demonstrating the quality of plaintiff's representative service," such as "substantial efforts taken as class representative to justify the discrepancy between [his] award and those of the unnamed plaintiffs." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008). Such incentive awards are particularly appropriate in wage-and-hour actions where a plaintiff undertakes a significant reputational risk in bringing suit against her former employer. *Rodriguez*, 563 F.3d at 958-59.

The Ninth Circuit has emphasized, however, that "district courts must be vigilant in scrutinizing all incentive awards." *Radcliffe v. Experian Info. Sols., Inc*., 715 F.3d 1157, 1165 (9th Cir. 2013) (internal quotation marks and citation omitted). In keeping with that admonition, district courts have declined to approve incentive awards that represent an unreasonably high proportion of the overall settlement amount or are disproportionate relative to the recovery of other class members. *See Ontiveros*, 303 F.R.D. at 365-66 (finding an incentive award of $20,000, comprising 1% of the common fund, to be excessive under the circumstances, and reducing the award to $15,000, where class representative spent 271 hours on the litigation and relinquished the opportunity to bring several of his own claims in order to act as class representative)*; see also Ko v. Natura Pet Prods., Inc.*, Civ. No. 09–2619 SBA, 2012 WL 3945541, at *15 (N.D. Cal. Sept. 10, 2012) (holding that an incentive award of $20,000, comprising one percent of the approximately $2 million common fund was "excessive under the circumstances" and reducing the award to $5,000); *Wolph v. Acer Am. Corp.*, No. C 09–01314 JSW, 2013 WL 5718440, at *6 (N.D. Cal. Oct. 21, 2013) (reducing the incentive award to $2,000 where the class representatives did not demonstrate great risk to finances or reputation in bringing the class action). In reducing the award, courts have noted that overcompensation of class representatives could encourage collusion at the settlement stage of class actions by causing a divergence between the interests of the named plaintiff and the absent class members, destroying the adequacy of class representatives. *See Staton*, 327 F.3d at 977–78; *see also Radcliffe*, 715 F.3d at 1165.

Here, the Settlement Agreement provides for a maximum class representative payment of $10,000. (ECF No. 71-3 at 6.) Plaintiff represents that the service payment is intended to compensate the class representative for her active participation in the investigation of the issues in this case, in responding to discovery, and in the negotiations leading to the Settlement. Plaintiff also notes that the class representative undertook a significant reputational risk by bringing suit against her former employer.

The Court cautions that the proposed $10,000 payment appears to be excessive under the circumstances of the case. The $10,000 proposed payment constitutes 5.4% of the gross settlement amount, and is more than 25 times higher than the estimated $393 average payment

for the other class members. With this caution, the Court will approve the representative service payment request on a preliminary basis. Like the attorneys' fees and costs, Plaintiff is to set forth the exact amount requested in a separate motion for final approval, to be filed prior to the opt-out/objection deadline. (*See* ECF Nos. 71-2 at 11, 71-3 at 2.)

At the final approval hearing, the court will review Plaintiff's evidence that the requested incentive award is warranted here, including evidence of the specific amount of time Plaintiff spent on the litigation, the particular risks and burdens carried by Plaintiff as a result of the litigation, and the particular benefit that Plaintiff provided to counsel and the class as a whole throughout the litigation. *See Goodwin*, 2017 WL 3173006, at *12 (citing *Bautista v. Harvest Mgmt. Sub LLC*, No. CV 12-10004 FMO (CWx), 2013 WL 12125768, at *15 (C.D. Cal. Oct. 16, 2013)).

### E. Appointment of Settlement Administrator

Plaintiff represents that the settling parties have agreed upon and propose that the Court appoint Simpluris to serve as the Settlement Administrator. Plaintiff represents that Simpluris "is very experienced in administering wage and hour class action settlements," and has submitted a bid to not exceed $9,000 in administering the settlement. (ECF Nos. 71-1 at 18, 71-2 at 20; *see* ECF No. 71-5 (copy of information on Simpluris).) The Court finds it appropriate to approve the appointment of Simpluris as Class Administrator.

### F. Notice Procedures

For proposed settlements under Rule 23, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); *see also Hanlon*, 150 F.3d at 1025 ("Adequate notice is critical to court approval of a class settlement under Rule 23(e)."). A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 561 F.3d 566, 575 (9th Cir. 2004) (internal quotations and citations omitted).

#### 1. Proposed Notice

During the May 3, 2018, hearing, the Court noted several concerns with the proposed notice

(ECF No. 71-4), which has been subsequently revised and resubmitted (ECF No. 76).

*a. Amount of Settlement*

The proposed notice initially included a typographical error on the amount of the Settlement (ECF No. 71-4 at 7.) The revised notice corrects this error (ECF No. 76 at 7.)

*b. Which Defendants are Participating in the Settlement*

During the May 3, 2018, hearing, the Court alerted the parties that it was concerned with the lack of disclosure in the notice regarding who is paying the settlement amount, given that the Settlement is only between Plaintiff and the Marthedal Defendants, and that Defendant Cal West Ag is not a party to the Settlement. The Court requested that the parties consider revising the proposed notice to include a sentence that conveys this information. Following the hearing, Plaintiff filed a revised proposed notice (ECF No. 76). The revised notice does not provide any additional disclosure regarding which Defendants are participating in the Settlement or which Defendants are paying the settlement amount.

The Marthedal Defendants also filed a supplemental memorandum regarding the disclosure of source of payments to the proposed class (ECF No. 77). In this memorandum, the Marthedal Defendants contend that the proposed notice, as revised, adequately sets forth the required information.

The Court agrees that the revised notice (ECF No. 76) accurately discloses to the Plaintiffs that they are being provided notice because they were a "non-exempt fieldworker of Cal West Ag. Services employed by and/or performed work for Defendants Jon and Eric Marthedal at Marthedal Farms at any time between September 30, 2011 and [date of preliminary approval]." However, the Court finds that the revised proposed notice does not provide Plaintiffs with sufficient notice that Defendant Cal West Ag is not participating in the settlement.

This action brings claims against three defendants: Cal West Ag Services, Jon Marthedal, and Eric Marthedal. As noted, the Settlement involves only the Marthedal Defendants. Cal West Ag is not a party to the Settlement, and is not released under the Settlement Agreement. The revised proposed notice does not, however, make this distinction – it does not state that only the Marthedal Defendants are participating in the Settlement and that Cal West Ag is not a party to

the Settlement and is not released under the Settlement.

As the Marthedal Defendants point out, the Release of Claims section of the revised proposed notice (ECF No. 76 at 6-7, ¶ 9) states that the Settlement releases only claims against the Marthedal Defendants and their affiliated entities and agents. The Court finds this single statement in the revised proposed notice to be insufficient to put Plaintiffs on notice of the scope of the Settlement Agreement. Absent an explicit statement in the notice regarding which Defendants are a party to the settlement, and which are not, it is likely that Plaintiffs will believe that all Defendants, including Cal West Ag, are participating in the Settlement.

The parties have not indicated any reason for not including a statement in the notice that Cal West Ag is not participating in the Settlement and that claims against Cal Ag West are not released under the Settlement Agreement, and the Court cannot see a legitimate basis for excluding this information. The Court will therefore recommend that the settling parties be required to modify the revised proposed notice to include an explicit statement that conveys to class members that Defendant Cal West Ag is not participating in the Settlement and that claims against Cal West Ag are not released under the Settlement Agreement.

*c.   Objections Provision*

The revised proposed notice states that if a class member disagrees with the Settlement, the class member may submit a written objection to the Court. (ECF No. 76 at 1, 8.) The revised proposed notice, states the following regarding the ability to object to the settlement:

> No person will be heard or entitled to object unless he or she files a written Notice of Intent to Appear at the Final Settlement Approval Hearing, together with all papers, briefs or other documents in support of objections and/or comments on the Settlement with Federal District Court (2500 Tulare Street, Fresno, California 93721) and serves copies of all such documents on counsel no later than [45 days after the mailing of the Class Notice] at the [designated addresses].

(ECF No. 76 at 8.)

During the May 3, 2018, hearing, the Court informed the parties that this objection provision, which is identical to the one in the original proposed notice (ECF No. 71-4 at 8), needed to be revised to be consistent with the Court's policy, which is that anyone can raise objections at the fairness hearing for final approval of the settlement, but that the Court retains discretion to

decline to consider an objection that has not been timely submitted in writing. The parties have failed to revise the objection provision of the proposed notice, or provide an explanation regarding why the objection provision was not revised as requested by the Court. (*See* ECF Nos. 76, 77.) The Court will therefore recommend that the settling parties be required to modify the objection provision of the revised proposed notice to reflect the Court's policy on this issue.

### d. *Claim Form – Consent to Jurisdiction*

Section 3 of the "Claim Form" (ECF No. 71-4 at 11) states that, in signing the form, the class member is consenting to the jurisdiction of the "Superior Court of California for the County of Stanislaus presiding over this case." This appears to be a typographical error that needs to be corrected as the settling parties have not provided the Court with notice of an intent to transfer the case to state court. The Court will recommend that the settling parties be required to correct this apparent typographical error.

### e. *Conclusion*

The Court recommends that, within 14 days, the parties file a second revised proposed notice that is consistent with this Order, including (1) information that clearly conveys to Plaintiffs that Defendant Cal West Ag is not participating in the settlement and that claims against Cal West Ag are not released under the settlement agreement; (2) a revised objection provision that accurately reflects the Court's policy that anyone can raise objections at the fairness hearing for final approval of the settlement, but that the Court retains discretion to decline to consider an objection that has not been timely submitted in writing; (3) a revised consent to jurisdiction to correct what appears to be a typographical error regarding the court to which the class member is consenting.

The Court finds that the remainder of the Notice Documents at ECF No. 71-4, as revised in ECF No. 76, and as modified in compliance with the above recommendations, should be approved.

### 2. Notice Procedure

No later than ten (10) calendar days after approval of the notice as described above,

Plaintiff's[1] counsel will provide the Settlement Administrator and the Marthedal Defendants' counsel with an electronic database or spreadsheet(s) in native electronic format containing for each Class Member his or her available Class Data (defined as name, last known mailing address and telephone number, social security number and number of pay periods in a covered position working at Defendants' facilities between September 30, 2011 and the date of preliminary approval). (ECF No. 71-3 at 2, 8.)

No later than ten (10) business days after receipt of the Class Data, the Settlement Administrator will mail the Class Notice Packets to all Class Members whose address information is known. (*Id.* at 9.) A Class Notice Packet is to include the Court-approved Class Notice, the Claim Form, and the form of Election Not to Participate in Settlement. (*Id.* at 2.) The Class Notice Packets are to be sent via first-class U.S. Mail using the mailing address provided to the Settlement Administrator. Before mailing the Class Notice Packets, the Settlement Administrator shall run the Class Data address information provided to the Settlement Administrator through the U.S. Postal Service's Change of Address Database. (*Id.* at 9.)

The Settlement Administrator shall make such further efforts as are possible and reasonable (if any) to provide the Class Notice Packets to members of the Class, whose original Class Notice Packet is returned as undeliverable, provided that all such efforts shall be completed by the thirtieth (30th) calendar day after the Court-approved Class Notice is mailed. (*Id.*) The Class Administrator shall document all efforts, and keep such documentation for a period of four (4) years from the date of the Court's Final Approval of the Settlement. Class Counsel is entitled to receive from the Settlement Administrator any updated address information about a Class Member that the Settlement Administrator obtains. (*Id.*)

At least fourteen (14) business days prior to the deadline for Class Members to submit Claim Forms, the Settlement Administrator will contact Class Members who have not submitted Claim

---

[1] In the Settlement Agreement, there appears to be an inconsistency regarding whether Plaintiff's counsel or the Marthedal Defendants' counsel are to provide the Class Data to the Settlement Administrator. (*Compare* ECF No. 71-3 at 8-9 ("Plaintiff's counsel will provide to the Settlement Administrator and Defendants' counsel an electronic database or spreadsheet(s)… containing for each Class Member his, or her, available Class Data") *with* ECF No. 71-3 at 9 ("the Settlement Administrator shall run the Class Data address information provided by Defendants").) The settling parties are directed to provide the Court with clarification on whether Plaintiffs' counsel or the Marthedal Defendants' counsel is to provide the Class Data to the Settlement Administrator.

Forms and remind them of the upcoming deadline to submit the form. (*Id.*)

No later than the day by which the Plaintiff must file the Motion for Final Approval of the Settlement, the Settlement Administrator will serve on the Parties and file with the Court a declaration of due diligence setting forth its compliance with its obligations under the Settlement Agreement. Prior to the Final Approval Hearing, the Settlement Administrator will supplement its declaration of due diligence if any material changes that have occurred since the date of the filing of its prior declaration. (*Id.*)

The Court finds that the proposed notice, including the claim form and the opt-out form, with the exceptions and recommended modifications discussed above, and the notice procedures, sufficiently provide notice in a reasonable manner to all class members who would be bound by the Settlement Agreement and that the proposed mail delivery is also appropriate under the circumstances.

The Court also finds the manner of distribution to be sufficient.

**V.    CONCLUSION AND ORDER**

Based on the foregoing, IT IS HEREBY RECOMMENDED:

1.    The proposed class be conditionally certified under Rule 23(c)(1), for purposes of settlement only, as the proposed class satisfies the requirements of Rule 23(a) as well as the requirements for certification under one of the subsections of Rule 23(b), including that:

        a.   The class is so numerous that joinder of all members is impracticable;

        b.   There are questions of law and fact common to the class;

        c.   The claims or defenses of the representative party are typical of the claims or defenses of the class; and

        d.   The representative party will fairly and adequately protect the interests of the class.

2.    The following persons be preliminarily certified as Class Members solely for the purpose of entering a settlement in this matter:

All Cal West Ag Service Inc.'s non-exempt workers who were employed by and/or performed work for Defendants Jon and Eric Marthedal as agricultural workers at

Marthedal Farms in California between September 30, 2011 and [the date of preliminary approval].

3.      The Settlement Agreement (ECF No. 71-3) be granted preliminary approval as it falls within the range of possible approval as fair, adequate, and reasonable, and appears to be the product of arm's length and informed negotiations and to treat all Class Members fairly.

4.      A final approval hearing on the question of whether the Settlement, attorneys' fees and costs to class counsel, and the class representative service payment should be finally approved as fair, reasonable, and adequate be held as set forth below.

5.      The form and content of the Notice of Class Action Settlement (ECF No. 71-4), as revised in a May 3, 2018, filing (ECF No. 76), including the Claim Form (ECF No. 71-4 at 10-12) and the Opt-Out Form (ECF No 71-4 at 13) (collectively the "Notice"), be approved conditioned on the settling parties making the following modifications to the Notice:

        a.   Provide an additional statement in the Notice of Class Action Settlement that clearly conveys to Class Members that Defendant Cal West Ag is not participating in the Settlement and that claims against Cal West Ag are not released under the Settlement.

        b.   Revise the objection provision of the Notice of Class Action Settlement to include an explanation that a Class Member may raise objections at the final approval hearing, but that the Court retains discretion to decline to consider any objection that has not been timely submitted in writing.

        c.   Revise the "Signature and Confirmation of Consent to Jurisdiction" portion of the Claim Form (71-4 at 11) to fix what appears to be a typographical error regarding the court to which the Class Member consents to jurisdiction.

6.      The settling parties be directed to file a second revised proposed Notice incorporating the above modifications within fourteen (14) days of the district court's order adopting this recommendation.

7.      The procedures for Class Members to be notified of, participate in, opt-out of, and object to the settlement, as set forth in the Settlement (ECF No. 71-3 at 8-12), with the above

modifications to the Notice, be approved.

8. The Court direct the mailing of the Notice by first class mail to the Class Members in accordance with the procedures set forth in the Settlement Agreement (ECF No. 71-3), with the above modifications to the Notice.

9. The Court approve the procedures for distributing the Notice to Class Members, with the above modifications to the Notice, as meeting the requirements of due process, providing the best notice practicable under the circumstances, and constituting due and sufficient notice to Class Members of the terms of the Settlement, their rights under the Settlement Agreement, their rights to object to or comment on the Settlement, their right to receive a Settlement Share or elect not to participate in the Settlement and the processes for doing so, and the date and location of the final settlement approval hearing.

10. That Class Members will receive a Settlement Share if, not later than forty-five (45) days after the mailing of the Notice, they submit a completed and timely Claim Form under the procedures set forth in the Notice, and unless they submit a valid and timely Election Not to Participate in Settlement (Opt-Out Form).

11. That any Class Member who elects not to participate in the Settlement has until forty-five (45) days after the mailing of the Notice to submit her or his Election Not to Participate in Settlement (Opt-Out Form) under the procedures set forth in the Notice.

12. Simpluris be appointed to act as the Settlement Administrator, under the terms set forth in the Settlement Agreement.

13. Carmela Mora be appointed as the Class Representative.

14. Mallison & Martinez be appointed as Class Counsel.

15. That the Notice, with the above modifications, be distributed to Class Members in accordance with the procedures set forth in the Settlement Agreement (ECF No. 71-3). Proof of distribution of the Notice is to be filed by the parties in conjunction with the motion for an order granting final approval of the Settlement.

16. That a final approval hearing be held on **October 19, 2018, at 10:00 AM** in Courtroom 10 (EPG) before Magistrate Judge Erica P. Grosjean, to determine whether the

Settlement should be granted final approval as fair, reasonable, and adequate as to the Class Members. The Court will hear all evidence and argument necessary to evaluate the Settlement, and will consider any request, made by separate motion, by plaintiffs and Class Counsel for Class Representative payments, and for Class Counsel fees and expenses payment. Class Members and their counsel may support or oppose the Settlement and the motion for awards of Class Representative payments and Class Counsel fees and expenses payment, if they so desire and as set forth in the Notice.

17.     That the motion for final approval of class action settlement be filed twenty-eight (28) days in advance of the final approval hearing, in accordance with Local Rule 230.

18.     That the Court reserves the right to continue the date of the final approval hearing without further notice to Class Members. The Court retains jurisdiction to consider all further applications arising out of or in connection with the Settlement.

19.     That not later than fourteen (14) calendar days before the deadline for objection or exclusion, Plaintiffs will file a motion for approval of their Class Counsels attorneys' fees and costs. The motion for Class Counsel attorneys' fees and costs shall be heard concurrently with the motion for final approval on October 19, 2018.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **June 27, 2018**                /s/ *Erica P. Grosjean*

UNITED STATES MAGISTRATE JUDGE