STAN S. MALLISON (SBN 184191)
  stanm@themmlawfirm.com
HECTOR R. MARTINEZ (SBN 206336)
  hectorm@themmlawfirm.com
LILIANA GARCIA (SBN 311396)
  lgarcia@themmlawfirm.com
STACI L. SSCHOFF (SBN 320692)
  staci@themmlawfirm.com
MALLISON & MARTINEZ
1939 Harrison Street, Suite 730
Oakland, California 94612
Telephone: (510) 832-9999
Facsimile:  (510) 832-1101

MARIO MARTINEZ (Bar No. 295473)
mmartinez@farmworkerlaw.com
EDGAR AGUILASOCHO (Bar No. 285567)
eaguilasocho@farmworkerlaw.com
MARTINEZ AGUILASOCHO & LYNCH, APLC
P.O. Box 11208
Bakersfield, California 93389-1208
Telephone: (661) 859-1174
Facsimile: (661) 840-6154

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA—FRESNO DIVISION

| | |
|---|---|
| CARMELA MORA, on behalf of herself and all others similarly situated,<br><br>          Plaintiffs,<br><br>          vs.<br><br>CAL WEST AG SERVICES, INC., JON MARTHEDAL, ERIC MARTHEDAL; and Does 1 through 20, inclusive,<br><br>          Defendants. | Case No. 1:15-CV-01490-LJO-EPG<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:        January 11, 2019<br>Time:        1:30 p.m.<br>Location:   2500 Tulare Street<br>              Courtroom 10, Sixth Floor<br>              Fresno, CA  93721<br><br>Before Magistrate Judge Erica P. Grosjean |

i

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ..................................................................................................... 1

II.  STATEMENT OF FACTS ....................................................................................... 3

    A.   Summary of the Litigation ................................................................................ 3

    B.   Settlement Negotiations .................................................................................... 3

III. SUMMARY OF SETTLEMENT TERMS ............................................................. 4

    A.   The Gross Settlement Payment ........................................................................ 4

    B.   Payment of Settlement Shares .......................................................................... 4

    C.   Distribution of Uncashed Checks ..................................................................... 5

    D.   Scope of the Class Member Releases ............................................................... 6

    E.   Objections and Opt-Out Process ...................................................................... 6

    F.   Class Representative Payments; Class Counsel Attorneys' Fees Payment and
       Class Counsel Litigation Expenses Payment ................................................... 7

IV.  THE MOTION FOR PRELIMINARY APPROVAL SHOULD BE GRANTED ............... 7

    A.   Preliminary Approval of the Settlement Is Appropriate ................................. 7

        1.   The Settlement Was the Product of Informed, Non-Collusive
            Negotiations ........................................................................................... 8

        2.   The Proposed Settlement Has No "Obvious Deficiencies." ................... 8

        3.   The Settlement Falls Within the Range of Possible Approval ............... 9

            a)   Liability Is Contested and the Settlement Provides Class
               Members Substantial Monetary Relief ...................................... 9

            b)   The Class Release Is Appropriate Given Plaintiffs' Claims. ........... 10

    B.   Conditional Certification of a Settlement Class Is Appropriate ................... 10

        1.   The Numerosity Requirement Is Met .................................................. 11

        2.   The Commonality Requirement Is Met ................................................ 11

        3.   The Typicality Requirement Is Met ..................................................... 11

        4.   Adequacy of Representation ................................................................ 12

5. Class Certification Is Proper Under Rule 23(b)(3) ........................................ 12

C. The Proposed Notice, Claim Form, Election Not to Participate Form, and Notice Plan Are Fair and Adequate ........................................................................ 12

D. Simipluris Should Be Appointed the Settlement Administrator ................................. 13

E. Proposed Schedule ........................................................................................ 14

V. CONCLUSION ............................................................................................... 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## **TABLE OF AUTHORITIES**

2

3

### Federal Statutes

4

Fed. R. Civ. P. 23.................................................................................................7, 10, 11, 12

5

### Treatises

6
*Manual for Complex Litigation, Third* (Fed. Judicial Center 1995)...................................7

7
*Newberg on Class Actions* 4th (2002) ...........................................................................7, 8

8

### Federal Cases

9
*Chiaramonte v. Pitney Bowes, Inc.*, 2008 WL 510765 (S.D. Cal. 2008) .......................10

10
*Churchill Vill., LLC v. Gen. Elec*, 361 F.3d 566 (9th Cir. 2004).....................................9

11
*City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041 (1st Cir. 1996) .......11

12
*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ..................................8

13
*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ..........................................................11

14
*Dennis v. Kellogg Company*, 697 F.3d 858, 865 (9th Cir. 2012) ....................................6

15
*Dunleavy v. Nadler*, 213 F.3d 454 (9th Cir. 2000) ......................................................10

16
*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ....................................................16

17
*Gen. Tel. Co. v. EEOC*, 446 U.S. 318 (1980) ..............................................................14

18
*Gen. Tel. Co. v. Falcon*, 457 U.S. 147 (1982) .............................................................14

19
*Hanrahan v. Britt*, 174 F.R.D. 356 (E.D. Pa. 1997) ....................................................11

20
*In re Corrugated Container Anti-Trust Lit. II*, 659 F.2d 1322 (5th Cir. 1981) ...............8

21
*In re Immune Response Securities Litigation*, 497 F.Supp.2d 1166 (S.D. Ca. 2007).....11

22
*In re N. Dist. of Cal., Dalkon Shield, Etc.*, 693 F.2d 847 (9th Cir. 1982) .....................15

23
*In re Playmobil Antitrust Litig.*, 35 F.Supp.2d 231 (E.D.N.Y. 1998) ...........................14

24
*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004).............................15

25
*Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011)..................................................6

26
*Officers for Justice*, 688 F.2d 615 (9th Cir. 1982)..........................................8, 9, 11, 13

27
*Oppenlander v. Standard Oil Co. (Ind.)*, 64 F.R.D. 597 (D.Colo. 1974) ......................10

28

*Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ..................................................... 11

*Ratner v. Bennett*, No. 92-4701, 1996 WL 243645 (E.D. Pa. May 8, 1996)................................. 12

*Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992) ...................................................... 14

*Santos v. Camacho*, 2008 WL 1699448 (D. Guam, April 10, 2008)............................................. 10

*Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) ..................... 6

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) ........................................ 8

Memorandum ISO Motion for Final Approval of Class Settlement          *Case No.* 1:15-CV-01490-LJO-EPG

## I.  **INTRODUCTION**

Plaintiff Carmela Mora ("Plaintiff") and defendants Jon and Eric Marthedal (collectively, "Defendants")[1], seek final approval of wage-and-hour class action settlement in accordance with the terms of the Settlement Agreement (the "Settlement") attached to the accompanying declaration of Stan Mallison (hereinafter "Mallison Decl.") as Exhibit 1. The Settlement is for a maximum of $185,000, which covers: payments to the named Plaintiff (subject to court approval), in addition to her Settlement Shares, up to $10,000 as compensation for her role as Class Representative (Settlement § III.C.1.); payments to Class Counsel of up to 33.33% of the gross settlement amount ($61,661) for their reasonable attorneys' fees, as well as up to $10,000 for their reasonable litigation expenses incurred in investigating the case, prosecuting the case, preparing for and negotiating at the mediations and settlement conference, conducting an elaborate document and damages analysis in this case, documenting the Settlement, securing approval of the Settlement, and related tasks (Settlement § III.C.2); a $5,000 payment to the California Labor and Workforce Development Agency ("LWDA") as the LWDA's share of the settlement of civil penalties under this agreement; and payment of up to $10,000 to the Settlement Administrator for its reasonable fees and expenses (Settlement § III.C.4). The Settlement is non-reversionary to Defendants and, if approved, the entire Settlement payment of $185,000 will be distributed as indicated herein. *See* Settlement, § III.A.

The Court has approved the claims process in its preliminary approval order. That process is as follows: the "Net Settlement Amount" will be distributed to all Class Members who submit timely and valid claim forms ("Claimants") on a *pro rata* basis based on the Claimant's total number of workweeks of employment during the Class Period. *See* Settlement, § III.E.1. The respective Settlement Shares of Class Members who timely submit an Election Not to Participate (Non-Participating Class Members), as well as Participating Class Members who fail to timely submit a Claim Form, will be distributed to Claimants in amounts proportional to their Settlement Shares. *See* Settlement, § III.G.3-4.

---

[1] Plaintiff Carmela Mora and Defendant Cal West Ag. have sought Cal West's dismissal from this action by stipulation. However, final approval of this class action settlement will dispose of the entire matter.

A Claimant must cash his or her Settlement Share check within six (6) months after it is last mailed to him or her. Settlement, § III.G.7. If a check is returned to the Settlement Administrator, the Settlement Administrator will make all reasonable efforts to re-mail it to the Claimant at his or her correct address. *Id*. If the check is not cashed within three (3) months after it is mailed to the Claimant, the Settlement Administrator will send the Claimant a letter informing him or her that unless the check is cashed within three (3) months, it will expire and become non-negotiable, and offer to replace the check if it was lost or misplaced but not cashed. *Id*. If the check remains uncashed by the expiration of the three (3) month period after this notice, the funds will be distributed to California Rural Legal Assistance, Inc. on a *cy pres* basis. *Id*.

The Settlement represents informed, closely negotiated compromises on both sides. Mallison Decl., ¶¶ 36, 37.  The Settlement was reached after Defendants' production of electronic and paper payroll and timekeeping data to Plaintiff, and extensive negotiations during mediation with mediator Steven Vartabedian. *Id*. Based on a detailed knowledge of the issues present in this action, Plaintiffs and their counsel are convinced that the Settlement is the best possible recovery under the circumstances, and in the best interest of Class Members. *Id*., ¶¶ 47-53.

Specifically, counsel for Plaintiff balanced the terms of the Settlement, including both the Settlement amount and the benefits conferred to Class Members by the Settlement, against the probable outcome of a wide range of issues at trial. Mallison Decl. ¶¶ 47-49. Counsel for Plaintiff carefully considered the risks of trial and other normal perils of litigation, including the merits of the affirmative defenses asserted by Defendants, the difficulties of complex litigation, the lengthy process of establishing specific damages, the difficulty in fully analyzing and utilizing the evidence at issue in this case, new legal decisions affecting pivotal issues in the case, class decertification issues, and other various possible risks and delays. *Id*. Plaintiff's counsel realizes that no matter how good the facts and law, every trial retains inherent risk while the proposed settlement provides a certain recovery for Class Members. *Id*. Further, litigation or trial of the matter would risk substantial delay of compensation to Class Members. *Id*.

Additionally, the Settlement has been well-received by Class Members.  Approximately 40 Class Members have submitted claim forms to receive portions of the Net Settlement funds.  Salinas

1  Decl., ¶12.  Zero individuals opted out of the Settlement.  *Id.*, ¶ 14.  No Class Members have objected

2  to the Settlement.  *Id.*, ¶15.  This is likely a reflection of the fact that the Settlement represents a

3  generous payout to Class Members - the average estimated payout to any individual Class Member

4  is $2,208.48.  *Id.*, ¶16.

5       As discussed below, the Settlement satisfies the criteria for final settlement approval under

6  federal law and falls well within the range of proper approval.  Accordingly, the parties now move

7  the Court for an order granting final approval of this class action settlement, including certifying the

8  Settlement class, approving the Settlement Administrator fees, and entering judgment thereon.

9  **II.    STATEMENT OF FACTS**

10      **A.    Summary of the Litigation**

11      This is a wage and hour class action settlement proposed for approximately 251 non-exempt

12  field workers who worked for Defendants for the relatively brief time from April 30, 2015 to June 5,

13  2015 picking and packing blueberries.  While the class period covers a broader time, as a factual

14  matter 96.8% of the shifts at issue involve April, May and June 2015. Salinas Decl. ¶12 . See also

15  Docket 79 for separate explanatory Briefing on this issue as previously requested by the Court.

16  Plaintiff sued Defendants to recover wages and penalties due as a result of Defendants' illegal piece-

17  rate compensation scheme and unlawful rest period practices. Mallison Decl. ¶2.

18      After the complaint was filed, Plaintiff conducted substantial discovery and non-discovery

19  investigation regarding class certification and the merits of their claims. Mallison Decl., ¶¶ 33-35.

20  Plaintiff conducted discovery, including an extensive set of document requests demanding all of the

21  critical payroll and timekeeping information at issue in this case and the names and contact

22  information. *Id*. The records demonstrated in an objective manner what occurred (in terms of hours

23  and wages) at the workplace at substantial times during the class period and served as a solid

24  foundation for a damage model in this case. Although laborious, it was the only means of providing

25  the detailed analysis necessary to obtain the favorable mediation results obtained. *Id*. at ¶35.

26      **B.    Settlement Negotiations**

27      The parties participated in an all-day mediation before mediator Steven Vartabedian, retired

28  Associate Justice for the California Court of Appeals for the Fifth Circuit. Mr. Vartabedian was

1   thoroughly apprised of the arguments and facts of this case by means of extensive briefing and

2   factual presentations. Mallison Decl. ¶36. As a result, the parties agreed upon the proposed

3   Settlement that Plaintiffs now presenting to the Court for preliminary approval. The Settlement

4   covers approximately 251 non-exempt field workers who worked for Defendants for the relatively

5   brief time from April 30, 2015 to June 5, 2015 picking and packing blueberries *Id.* at ¶37.

6

7   **III.    SUMMARY OF SETTLEMENT TERMS**

8        **A.    The Gross Settlement Payment**

9        Under the Settlement, Defendants will make a Settlement payment of $185,000 within ten

10   days after the Settlement becomes final. Settlement § III.A. This settlement is non-reversionary and

11   any late payment will incur interest at the statutory rate for judgment for wages under California law.

12   *Id.*

13        The Settlement provides for: payments to the named Plaintiff (subject to court approval), in

14   addition to her Settlement Share of up to $10,000 as compensation for her role as Class

15   Representative (Settlement § III.C.1.); payments to Class Counsel of up to 33.33% of the gross

16   settlement ($61,661) for their reasonable attorneys' fees, as well as an additional reasonable amount

17   up to $10,000 for their litigation expenses incurred in investigating the case, prosecuting the case,

18   preparing for and negotiating at the mediations and settlement conference, conducting document and

19   damage scanning, printing, and analysis in this case, documenting the Settlement, securing approval

20   of the Settlement, and related tasks (*id.*, § III.C.2.); a $5,000 payment to the LWDA as the LWDA's

21   share of the settlement of civil penalties under this agreement (*id.*, § III.C.3.); and payment of up to

22   $10,000 for the Settlement Administrator's reasonable fees and expenses (*id.*, § III.C.3). Full

23   justification for all of the above payments will be presented at final approval.

24        **B.    Payment of Settlement Shares**

25        After the other amounts are deducted from the Maximum Settlement Amount, the "Net

26   Settlement Amount" will be distributed to all Claimants on a *pro rata* basis as follows:

27        Calculation.  The Settlement Share for each Claimant will be based on (a) that
         Claimant's total number of pay periods in which claimant was employed by Cal
28       West AG Services, Inc. at Marthedal Farms during the Class Period (b) divided by

4

the aggregate number of pay periods for Defendants of all Participating Class Members between September 30, 2011 and the date of the preliminary approval (c) multiplied by the value of the Net Settlement Amount

Settlement, § III.E.1.

Plaintiff's counsel has reviewed this method of distribution and determined that, on the whole, it serves the purpose of providing a simple and readily determinable method for distribution, while also allowing for a distribution that corresponds closely to the alleged damages and likely recoveries, which are based upon various theories of liability. Mallison Decl., ¶44. Plaintiff's counsel considered other, more complicated methods, but determined that although these methods have some merit, that they were not without controversy and would likely lead to myriad objections regarding their formulation and implementation. *Id.* The formula employed in the Settlement is commonly used in wage and hour cases, and is appropriate in this case, where most workers experience the same working conditions and have similar claims roughly correlating with the number of hours that they worked. *Id.* Further, although there might be marginally better theoretical methods for calculating allocations amongst class members, the costs of obtaining and processing the information necessary to make such calculations would likely outweigh any benefits of using a more complex calculation method. The above method is simple, efficient, and uncontroversial and should be approved by the Court. *Id.*

### C.   <u>Distribution of Uncashed Checks</u>

The parties have agreed that follow-up on and redistribution of uncashed checks will proceed using the following method:

> A Claimant must cash his or her Settlement Share check within six (6) months after it is mailed to him or her. If a check is returned to the Settlement Administrator, the Settlement Administrator will make all reasonable efforts to re-mail it to the Claimant at his or her correct address.  If Claimant's Settlement Share check is not cashed within three (3) months after its last mailing to the Claimant, the Settlement Administrator will send the Claimant a letter informing him or her that unless the check is cashed in the next three (3) months, it will expire and become non-negotiable, and offer to replace the check if it was lost or misplaced but not cashed. If the check remains uncashed by the expiration of the three-month period after this notice, the check proceeds will be paid to the California Rural Legal Assistance on a Cy Pres basis and the Claimant nevertheless will remain bound by the Settlement.

Settlement, § III.G.7.

The Ninth Circuit has repeatedly provided guidance with regards to the proper selection of

*cy pres* beneficiaries. To ensure that the settlement retains some connection to the plaintiff class and the underlying claims, a *cy pres* award must qualify as 'the best distribution to giving the funds directly to class members." *Dennis v. Kellogg Company*, 697 F.3d 858, 865 (9th Cir. 2012) (quoting *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990). "To avoid the 'many nascent dangers to the fairness of the distribution process,' we require that there by 'a driving nexus between the plaintiff class and the *cy pres* beneficiaries'" *Dennis*, *supra*, 697 F.3d at 965 (quoting *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011). To ensure this, the Ninth Circuit requires that:

> … a *cy pres* award must be "guided by 1) the objectives of the underlying statute(s) and 2) the interest of the silent class members" … and must not benefit a group 'too remote from the plaintiff class. *Dennis v. Kellogg* at 865 (quoting *Six Mexican Workers*, 904 F.2d at 1308).

Here, the proposed *cy pres* recipient, California Rural Legal Assistance ("CLRA"), clearly satisfies the objectives of the underlying statutes and the interest of silent class members. CLRA provides legal assistance in wage and hour disputes to low income workers in rural areas of California, in addition to myriad other services.

**D.    Scope of the Class Member Releases**

The scope of the release by all Participating Class Members (all Class Members other than those who elect not to participate in the Settlement) tracks the scope of Plaintiff's allegations and is not broader than the wage-and-hour claims at issue in the complaint. *See* Settlement, § III.H.2.

**E.    Objections and Opt-Out Process**

Any Class Member who so wished to, could have objected to or commented on the Settlement; or elect not to participate in the Settlement. *See* Settlement, § III.G.4. The Class Notice fully explains the objection/comment and exclusion procedures. *See* Ex. 2 to Mallison Decl. Notably, no Class Member objected to any of the terms of the Settlement, and only no members elected to exclude themselves from the Settlement. Salinas Decl., ¶¶ 14-15.

**F.     Class Representative Payments; Class Counsel Attorneys' Fees Payment and Class Counsel Litigation Expenses Payment**

By a motion to be filed prior to the Final Approval Hearing, Plaintiff and her counsel will seek a Class Representative Payment of up to $10,000, in addition to her Settlement Share, in compensation for her service as Class Representative; and an award to Class Counsel of a Class Counsel Attorneys' Fees Payment of not more than 33.33% of the Gross Settlement Amount, in addition to a Class Counsel Litigation Expenses Payment of not more than $10,000. Settlement, § III.C.2. The exact amounts requested will be contained in a motion for final approval.

## IV.     THE TERMS OF PRELIMINARY APPROVAL HAVE BEEN SATISFIED

On August 22, 2018 this Court issued an order granting preliminary approval of the Settlement, conditionally certified the Class, ordered that the Class be sent notice of the Settlement and approved the form of notice proposed by the parties, and preliminarily granted the Class Representative Enhancement and Class Counsel's fee request. Mallison Decl., ¶ 60; Doc. 84.

### A.     The Notice Process Was Diligently Carried Out

The procedures for giving notice to the class members, as set forth in the Settlement and ordered in the Court's August 22, 2018 Preliminary Approval Order, have been fully and properly carried out. Mallison Decl., ¶61; See Salinas Decl., ¶¶4-10.

The Court directed that the Class be sent notice of the Settlement and approved the form of notice proposed by the parties, and preliminarily granted the Class Representative Enhancement and Class Counsel's fee request. The Court directed that the proposed Class Notice, Claim Form, and Exclusion Form be sent to class members in the manner specified by the Settlement. Mallison Decl., ¶60; Doc. 84.

The claims administrator and Class Counsel have carried out this Court's order to the extent possible. Mallison Decl. ¶ 61; See Salinas Decl., ¶¶ 4-10. On October 19, 2018 Notice Packets were mailed to 251 Class Members. Salinas Decl., ¶7. If a Class Member's Notice Packet was returned by the USPS as undeliverable and without a forwarding address, Simpluris performed an advanced address search (i.e. skip trace) on all of these addresses by using Accurint, a reputable research tool owned by Lexis-Nexis. Salinas Decl., ¶8. Simpluris used the Class Member's name and previous address to locate

1    a current address. *Id*. Through the advanced address searches, Simpluris was able to locate nineteen

2    updated addresses and Simpluris promptly mailed Notice Packets to those updated addresses. *Id*.

3    Twenty-Three Notice Packets were undeliverable. *Id*. As the Claims Administrator has executed its

4    obligations pursuant to the Court's Preliminary Approval Order (Doc. 37), final approval of its costs

5    and fees ($10,000) is appropriate.

6           **B.     The Class Has Accepted the Settlement**

7           The Class has accepted the settlement, with claimants representing 15.94% of the class

8    claims having made claims. Salinas Decl., ¶12. Plaintiffs' counsel, having practiced class action

9    litigation for approximately 22 years, opine that this level of participation is expected for a

10   farmworker case of this type. Mallison Decl., ¶63.  There were only no requests by Class Members

11   to be excluded from the Settlement, and no objections to the Settlement or any of its terms filed with

12   the Court or sent to counsel. Salinas Decl., ¶¶14-15.  As such, there is no evidence that the class

13   members do not support this settlement and many active participants in the settlement. As of this

14   date, the average estimated payment is $2,208.48 and the highest estimated payment is $4,052.25.

15   Salinas Decl., ¶16.

16   **V.    FINAL APPROVAL OF THE CLASS SETTLEMENT IS APPROPRIATE**

17          The Ninth Circuit has a strong judicial policy favoring settlements, particularly in class

18   actions and other complex cases where substantial resources can be conserved by avoiding the time,

19   cost, and rigors of formal litigation. See 4 *Newberg on Class Actions* 4th (2002) ("*Newberg*"), §

20   11.41 (and cases cited therein); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.

21   1992); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) and 4 Timothy Eble et al.,

22   *Newberg on Class Actions* § 11.41 (Alba Conte & Herbert B. Newberg eds., 4th ed. 2002 & Supp.

23   2008) (and cases cited). Indeed, settlement of complex cases contributes greatly to the efficient

24   utilization of scarce judicial resources and achieves the speedy resolution of justice, for "[a] just

25   result is often no more than an arbitrary point between competing notions of reasonableness." *In re*

26   *Corrugated Container Anti-Trust Lit. II*, 659 F.2d 1322, 1325 (5th Cir. 1981). However, a class

27   action may not be dismissed, compromised, or settled without the approval of the court. Fed. R. Civ.

28   P. 23(e).

On a motion for final approval of a class action settlement, a court's inquiry is whether the settlement is "fair, adequate and reasonable." Fed. R. Civ. Pro. 23(e)(1)(C); *Officers for Justice*, 688 F.2d at 625. A settlement is fair, adequate and reasonable, and therefore merits final approval, when "the interests of the class are better served by the settlement than by further litigation." Manual for Complex Litigation, Fourth, § 21.6 at 309.

This inquiry involves the balancing of many factors, including: (1) the strength of Plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; and (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Vill., LLC v. Gen. Elec*, 361 F.3d 566, 575 (9th Cir. 2004); *City of Seattle*, 955 F.2d at 1268; *In re Omnivision Technologies, Inc*., 2008 WL 123936 (N.D. Cal, January 9, 2008).

Under these standards, the proposed Settlement is fair, reasonable and adequate.

### A.    The Strength of Plaintiffs' Case

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." 5 *Moore's Federal Practice* § 23.85[2][b] (Matthew Bender 3d. ed.). However, in balancing these factors, "a proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class." *Id.* As noted by the Ninth Circuit:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor [the Court of Appeals] is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wastefulness and expensive litigation that induce consensual settlements.

*Officers for Justice*, *supra*, 688 F.2d at 625.

Although Plaintiffs believe strongly in the underlying merits of their case, wage-and-hour cases on behalf of low-wage workers can difficult to prove on a class basis especially given the changing and uncertain legal environment. Further, there are clear uncertainties surrounding

9

Plaintiffs' ability to prove their claims given the unpredictability of a lengthy and complex jury trial. Mallison Decl., ¶ 48.

For their part, Defendant contests liability in this action, are represented by zealous counsel, and are prepared to vigorously defend against these claims if the action is not settled. Mallison Decl., ¶52. Even if Plaintiffs are successful in certifying a class(es) for class treatment, there still a possibility that future legal development could lead to the Class being decertified by the Court. There is also a significant risk that Defendants would prevail in its asserted defenses. *Id.* Nonetheless, in this Settlement, Plaintiffs obtained what it estimates to be several times value of the class wage claims and a substantial portion of the potential penalties at issue in this case, without discounting for the risk involved in proceeding in the matter and any delay in getting relief to Plaintiffs and the Class. Mallison Decl., ¶49.

**B.** **The Risk, Expense, Complexity, and Likely Duration of Further Litigation**

Another relevant factor in the present matter is the risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement. *See Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 458 (9th Cir. 2000). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." 4 Timothy Eble et al., *Newberg on Class Actions* § 11.41 (Alba Conte & Herbert B. Newberg eds. 4th ed. 2002 & Supp. 2008). As observed in *Oppenlander v. Standard Oil Co. (Ind.)*, 64 F.R.D. 597 (D.Colo. 1974):

> The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, "It has been held proper to take the bird in hand instead of a prospective flock in the bush."

64 F.R.D. at 624. *See also Santos v. Camacho*, 2008 WL 1699448 (D. Guam, April 10, 2008).

Here, the Court must balance the risks of continued litigation against a certain and immediate recovery for the Plaintiff Class in an amount that several times the value of the underlying class wage claims should Plaintiffs prevail at trial and a substantial portion of the class penalty claims, which remains an uncertainty. Mallison Decl., ¶¶49. Further, there are significant risks in continued litigation, such as a change in case or statutory law in the wage and hour field. Mallison Decl., ¶¶49.

1    Against all of these uncertainties, a payout of $185,000 weighs against continued litigation and the

2    risk of recovering nothing. *Id.*; *See also Chiaramonte v. Pitney Bowes, Inc.*, 2008 WL 510765 (S.D.

3    Cal. 2008).

4    **C.    The Extent of Discovery Completed and the Stage of the Proceedings**

5    Approval of a class action settlement does not require that discovery be exhaustive, *In re*

6    *Immune Response Securities Litigation*, 497 F.Supp.2d 1166, 1174 (S.D. Ca. 2007), but discovery

7    must be sufficient to inform the decision to resolve the litigation. *Id.*  The Court need not reach any

8    ultimate conclusions on the contested issues of fact and law that underlie the merits of the dispute,

9    for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive

10   litigation that induce consensual settlements. *Officers for Justice*, 688 F.2d at 625. When a

11   settlement following sufficient discovery and genuine arms-length negotiation is reached, the

12   negotiation is presumed fair. *See City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041,

13   1043 (1st Cir. 1996). Here, Plaintiffs' counsel has interviewed numerous witnesses and reviewed

14   thousands of pages of documents and/or data from employees. Mallison Decl., ¶ 33. This included

15   propounding several sets of discovery on Defendants designed to obtain the critical information at

16   issue in this case, i.e., paper and electronic timekeeping and payroll information, and obtained the

17   core payroll and timekeeping information. *Id.* The records obtained through Plaintiffs' discovery

18   efforts detailed in an objective manner what occurred (in terms of hours and wages) at the workplace

19   at substantial times during the class period and served as a solid foundation for a damage model in

20   this case, which led directly to the Settlement in this matter. *Id.*

21   **D.    The Experience and Views of Counsel**

22   In reviewing the opinions of counsel, "great weight" is accorded to the recommendation of

23   the attorneys. *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997). They

24   are the ones who are most closely acquainted with the facts of the underlying litigation. *Id.* "Parties

25   represented by competent counsel are better positioned than courts to produce a settlement that fairly

26   reflects each party's expected outcome in the litigation." *Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378

27   (9th Cir. 1995). Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to

28   substitute its own judgment for that of counsel." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir.

1977); *Hanrahan v. Britt*, 174 F.R.D. 356, 366-368 (E.D. Pa. 1997) (presumption of correctness applies to a class action settlement reached in arms'-length negotiations between experienced, capable counsel after meaningful discovery) (citing *Manual for Complex Litigation*, Second, § 30.41 (1985), and *Ratner v. Bennett*, No. 92-4701, 1996 WL 243645, \*5 (E.D. Pa. May 8, 1996).

Here, both parties conducted extensive investigation and discovery allowing them to assess the strengths and weaknesses of the case. Mallison Decl., ¶ 34. For their part, Plaintiffs' counsel reviewed a massive amount of payroll and timekeeping documents prior to and during the settlement negotiations. *Id.*, ¶ 34. The Settlement was presented to the Court after informed and extensive negotiations among the settling parties presided over by accomplished mediator, former Appellate Justice Vartabedian. *Id.*, ¶ 36.  As such, the Settlement is the product of non-collusive negotiations. Based on counsel's thorough investigation and discovery, and weighing the risk of significant delay, the defenses asserted by Defendants, the amount of potential damages in this case, and success on the merits at trial, Plaintiffs' counsel is of the opinion that the Settlement with Defendants for $185,000 is reasonable and adequate and is in the best interest of the class.

**E.       The Reaction of the Class Members to the Proposed Settlement**

The reactions of the members of a class to a proposed settlement is a proper consideration for the trial court." 5 *Moore's Fed. Practice* § 23.85[2][d] (Matthew Bender 3d ed.). Class Representative's opinion of the settlement are especially important as "[t]he representatives' views may be important in shaping the agreement and will usually be presented at the fairness hearing; they may be entitled to special weight because the representatives may have a better understanding of the case than most members of the class." *Manual for Complex Litigation*, Third, § 30.44 (1995).

1.       Class Representatives Reaction

The Class Representative is strongly in support of the settlement. Mora Decl., ¶ 8. The Class Representative has an understanding of the merits of this settlement having participated in the discovery and negotiation process. *See* id. The Class Representative has spent a substantial amount of time and energy over the past three years keeping himself informed and participating in the litigation, organizing workers, participating in discovery and mediating this case. *Id*. This factor weighs in favor of final approval.

2.      No Class Members Objected to the Settlement

The Court should carefully weigh the number and nature of objections while keeping in mind that a settlement can be fair even if a large number of class members oppose it. *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 174 (5th Cir.1983). Here, there have been no objections to the Settlement. Salinas Decl., ¶ 15.

**F.      The Procedure By Which the Settlement was Arrived Supports the Settlement**

As noted by the Ninth Circuit, the eight listed factors is "by no means an exhaustive list of relevant considerations." *Officers for Justice*, 688 F.2d 615, 625 (9th Cir. 1982). As such, in conformance with the Manual for Complex Litigation, Fourth, § 21.6, Judge Vaughn Walker has suggested that the procedure by which the settlement was arrived is an important fact in determining whether a settlement should be approved. Here, the Settlement was reached after nearly exhaustive discovery and extensive arms-length negotiations during mediation with a seasoned wage and hour class action mediator, form Appellate Justice Vartabedian. Mallison Decl., ¶36. This procedure weighs in favor of approving the settlement.

For all of the above reasons, Final Approval of the Class Action Settlement should be granted.

**VI.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS**

To complete the formal settlement approval process, the Court must satisfy itself that the requirements of Federal Rule of Civil Procedure 23 are met to certify the class described in the complaint. Every requirement of Rule 23 is satisfied with respect to this proposed settlement class. This Court, in its preliminary-approval order, held that that:

> The proposed class is conditionally certified pursuant to Rule 23(c)(1) as plaintiffs, for the purposes of settlement only, satisfy the requirements of Rule 23(a) as well as the requirements for certification under one of the subsections of Rule 23(b) . . .

As discussed below, Plaintiffs believe that this court should transform the preliminary class certification into a final certification of the Settlement Class.

1.      The Numerosity Requirement is Met

Rule 23(a)(1) allows a class action to be maintained if "joinder of all members is

impracticable" owing, in primary part, to the large number of people in the proposed class.  Fed. R. Civ. P. 23(a)(1); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). In satisfying this requirement there is no exact numerical cut-off; the specific facts of each case must be examined to determine if impracticability exists. *See, e.g.*, *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980). A finding of numerosity can be demonstrated through common sense assumptions. *In re Playmobil Antitrust Litig.*, 35 F.Supp.2d 231, 239 (E.D.N.Y. 1998). In this case, the parties believe the proposed Settlement Class is approximately 250 farmworkers. Salinas Decl., ¶ 5. The size of this proposed class coupled clearly renders joinder impracticable.

### 2.     The Commonality and Typicality Requirement Are Met

Rule 23(a)(2) allows a class action to be maintained if "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2); *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 155 (1982). Rule 23(a)(3) requires that "the claims or defenses of the representative parties [must be]…typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A claim is typical if it: (1) arises from the same event or practice or course of conduct that gives rise to the claims of other class members; and (2) is based on the same legal theory as their claims. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). The test requires that the class representative "must be part of the class and possess the same interest and suffer the same injury as the class members." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982).

The typicality requirement is also met in this case. Each of the Class Representatives has claims similar and typical of the rest of the Class since they suffered similar injuries and have the same interest in redressing them. These facts have not changed since the court issued its August 22, 2018 Order preliminarily approving the Class settlement. Docket 84.

### 3.     The Named Plaintiff and Class Counsel Are Adequate

Rule 23(a)(4) requires that the named plaintiff and proposed Class Counsel be able to "fairly" and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon*, *supra*, at 1020.

1    This court has already addressed this issue in its August 22, 2018 order when it appointed

2   class representatives and class counsel. Nothing has changed since this order was issue that would

3   suggest a basis for altering this conclusion.

4            4.    Certification Under Rule 23(b)(3) Is Appropriate for Settlement Purposes

5    In addition to meeting the requirements of Federal Rule of Civil Procedure 23(a), an action

6   must satisfy one of the requirements of Rule 23(b) to be certified for class treatment for settlement

7   purposes.  *See Hanlon*, 150 F.3d at 1022; and *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516,

8   527 (3d Cir. 2004). In particular, the court must find that questions of law or fact common to the

9   members of the class predominate over any questions affecting only individual members and that a

10  class action is superior to other available methods for the fair and efficient adjudication of the

11  controversy. Here the issues of Defendant's alleged failure to compensate Class Members for unpaid

12  time; failure to provide paid rest periods; and derivative remedies stemming from these violations

13  are some of the issues common to the class that predominate over individual questions.

14   With regard to superiority, Rule 23(b) provides four determining factors.  Fed. R. Civ.

15  P.23(b). The first factor for consideration is the interest of each member in "individually controlling

16  the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A).  This factor is more

17  relevant where each class member has suffered sizeable damages or has an emotional stake in the

18  litigation. *See, e.g., In re N. Dist. of Cal., Dalkon Shield, Etc.*, 693 F.2d 847, 856 (9th Cir. 1982).

19  Here, where the monetary damages each plaintiff individually suffered are relatively modest,

20  certifying a class action is favored. *Id.* Here, the average claim amount is $2,208,48 militating

21  toward class certification. Salinas Decl., ¶16.

22   The second factor to consider is "the extent and nature of any litigation concerning the

23  controversy already commenced by or against members of the class." Fed. R. Civ. P. 23(b)(3)(B).

24  The only known litigation concerning the controversy is the case at issue in this settlement. Indeed,

25  no objections were submitted. Salinas Decl., ¶15.  This weighs heavily in favor of class certification

26  in this case.

27   The third factor to consider is "the desirability or undesirability of concentrating the

28  litigation of the claims in the particular forum."  Fed. R. Civ. P. 23(b)(3)(C). However, the context

15

of settlement, the desirability or undesirability of concentrating the litigation of the claims in a particular forum is not significant and is essentially irrelevant. *See AmchemProds. Inc.*, 521 U.S. at 620 (stating that where a district court is confronted with a settlement-only class certification, the court need not inquire whether the case, if tried, would present manageability problems because the point is that there will be no trial). For the purposes of settlement, concentrating litigation in one forum is desirable.

The fourth and final factor is "the difficulties likely to be encountered in the management of a class action." This factor is commonly described as the manageability issue, "encompass[ing] the whole range of practical problems that may render the class format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974). However, for purposes of certifying a class for settlement purposes, this court need not consider this factor. *Amchem*, 521 U.S. at 620 (a district judge faced with a request to certify a settlement class "need not inquire whether the case, if tried, would present intractable management problems" under Rule 23(b)(3)).

These decisions are consistent with the U.S. Supreme Court's recognition in *Amchem Prods.*, that while a proposed settlement class must meet all the requirements of Rule 23, the court need not assess whether the manageability requirement of Rule 23(b)(3) is met because the parties do not propose to litigate the case of a class action. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems…for the proposal is that there is no "trial"). Accordingly, recognizing that the parties here propose a class settlement, this Court need only inquire whether the proposed Settlement Class is sufficiently cohesive with respect to the relevant factual and legal issues as to make a class wide settlement process fair. *See Amchem*, 391 F.3d at 528.

As such, the class of all non-exempt employees employed by a Defendants in the State of California, from April 30, 2015 to June 5, 2015 should be granted certification for settlement purposes.

**VII.    THE REQUESTED CLASS REPRESENTATIVE ENHANCEMENT AWARDS ARE REASONABLE AND SHOULD BE GIVEN FINAL APPROVAL**

Plaintiff Carmela Mora seeks an enhancement in the amount of $10,000. Neither class members nor Defendants oppose this enhancement payment. These payments are intended to recognize the broader release of all of his claims and to compensate him for her extensive efforts that she has spent on behalf of the Class over the course of this litigation. Mora Decl. ¶¶ 3-9. The amount of effort and dedication expressed by this Plaintiff exceeded expectations.

"Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca Cola Co.* 200 FRD 685, 694 (N.D. GA 2001) (quoting *In Re Southern Ohio Correctional Facility*, 175 FRD 270, 272 (SD Ohio 1997); see also Complex Lit. Manual § 30.42 n.763 (noting that such awards "may sometimes be warranted for time spent meeting with class members or responding to discovery.") In the *Coca-Cola* case, the court approved incentive awards of $300,000 to each named plaintiff in recognition of the services they provided to the class in responding to discovery, participating in the mediation process and taking the risk of stepping forward on behalf of the class. *Coca-Cola, supra*, at 694; see also *Van Vranken v. Atlantic Richfield Co*., 901 F. Supp. 294 (ND Cal. 1995) (approving $50,000 participation award). *Stanton v. Boeing Co.,* 327 F.3d 938, 977 (9th Cir. 2003, citing *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (approving a service award of $25,000).

In this case, the Class Representative performed the following tasks, among others: (1) assisted Counsel in investigating and substantiating the claims alleged in this action; (2) assisted in the preparation of the complaint in this action; (3) produced evidentiary documents to their Counsel; (4) assisted with mediation and settlement of this litigation. As demonstrated by Plaintiff's declaration, a considerable amount of time was expended.  Mora Decl. ¶¶4-7.  Notably, the Class Representatives gave up her other legal rights by a broad release to pursue valuable individual claims for the benefit of the class to ensure that the class claims were pursued and settled favorably.  Without this sacrifice this settlement would not have happened.

## VIII.   THE ATTORNEYS' FEES & COSTS TERMS ARE REASONABLE

### A.   Class Counsel Attorneys' Fees Request Is Reasonable

Plaintiffs' counsel seeks only $61,661 of the $185,000 in total Settlements funds obtained in the class settlement agreement.  Pursuant to California Rules of Court, Rule 3.769, Class Counsel respectfully requests that this Court approve the settlement's fees and cost provisions. The Settlement (§ III.B.2) and the Class Notice both provide for attorneys' fees of up to $66,661 under the "common fund" doctrine. Courts have long recognized the "common fund" or "common benefit'" doctrine, under which attorneys who create a common fund or benefit for a group of persons may be awarded their fees and costs to be paid out of the fund. *Serrano v. Priest* ("*Serrano* III") 20 Cal.3d 25, 34 (1977), quoting *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1.The California Supreme Court has held that, "when a number of persons are entitled in common to a specific fund, and an action brought by a plaintiff or plaintiffs for the benefit of all results in the creation or preservation of that fund, such plaintiff or plaintiffs may be awarded attorneys' fees out of the fund." *Serrano*, 11 Cal.3d 1; *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375 at 391-392 (1970) (United States Supreme Court endorsing the common fund approach in class actions). California Practice Guide: Civil Trials and Evidence (The Rutter Group) at §17:172.3 explains the common fund doctrine as follows:

> Where the lawsuit results in the recovery of a fund or property benefiting others as well as plaintiff (e.g., a class action), the court has inherent equitable power to order plaintiff's attorney fees paid out of the common fund or property [citations]. Such fee spreading assures that all of those benefited by the litigation pay their fair share of obtaining the recovery.

The percentage-of-the-fund approach is the preferred method of awarding fees in traditional common fund cases, such as this case. Where the settlement amount is a "certain or easily calculable sum of money," use of the percentage-of-the-fund method is appropriate. *Serrano III*, 20 Cal. 3d at 35.

In *Glendale City Employees' Association v. City of Glendale* 15 Cal.3d 328, 341 ft.19 (1975), the California Supreme Court upheld an attorneys' fee award based on a percentage of the common benefit obtained in a lawsuit by a city employees' association for retroactive wages. In *Quinn v. State of California,* 15 Cal.3d 162, 167 (1995), the California Supreme Court stated: "[O]ne who expends attorneys' fees in winning a suit which creates a fund from which others derive benefits may require

1    those passive beneficiaries to bear a fair share of the litigation costs."  Similarly, in *City and County*

2    *of San Francisco v. Sweet,* 12 Cal.4th 105, 110-111 (1995), the California Supreme Court recognized

3    that the common benefit doctrine has been applied consistently in California when an action brought

4    by one party creates a fund in which other persons are entitled to share.[2]

5         Indeed, Mallison & Martinez have been awarded attorneys' fees in common fund cases of

6    1/3 of the entire settlement amount in numerous similar wage and hour cases litigated in California.

7    See e.g. *In re Milgard* (Case No. BC449639, Los Angeles Superior Court); *Jacobo v. Peninsula*

8    *Packaging LLC* (Case No. CU-11-00127, San Benito Superior); Larios v. Moana Hotel (Case No.

9    CV082368, Marin Superior Court); *Ibañez et al. v. Food Specialists Inc. et al.*: (Case No. RG 06

10   293981, Alameda Superior Court); Huerta et al. v. Athwal Almonds (Case No. 2017185, Stanislaus

11   Superior); *Miranda et al v. Don Roberto Jewelers* (Case No. 01265947, Santa Barbara Superior

12   Court); *Lara et al. v. Sierra La Verne Country Club* (Los Angeles Superior Court); *Zacapa v. Don*

13   *Roberto*, (Case No. 1376022, Santa Barbara Superior Court); Hurtado-Lopez v. Armadillo Bay (Case

14   No. RG 08390556, Alameda Superior Court); *Avalos v. La Salsa, Inc.* (Judicial Council Coordinated

15   Case No. 4488, Santa Barbara Superior Court); see also federal cases *Benitez v. Wilbur,* E.D. Cal.

16   Case No. 1:08-cv-1122 LJO GSA; *Alvarado et al. v. Rex Nederend,* E.D. Cal. Case No. 1:08-cv-

17   01099 OWW DLB; *Vasquez v. Coast Valley Roofing, Inc.*, E.D. Cal. Case No. 1:07-cv-00227;

18   *Chavez et al. v. Petrissans et al.,* E.D. Cal., 1:08-cv-00122.

19        As the cases cited above demonstrate, attorneys' fee awards of 33.33% are well established

20   by California and federal law and practice. Accordingly, Class Counsel's attorneys' fees request is

21

22   _____

23   [2] Numerous appellate courts have similarly found. See e.g., *Knoff v. City and County of San*

24   *Francisco,* 1 Cal.App.3d 184, 203-204 (1969) (court upheld a "contingent percentage" award of
     attorneys' fees in a representative action as the proper exercise of the court's broad equitable

25   powers); *Rider v. County of San Diego,* 11 Cal.App.4th 1410, 1423 (1992) (attorneys' fees and
     expenses properly awarded from common benefit composed of illegally imposed sales and use

26   tax); *Bank of America v. Cory,* 164 Cal.App.3d 66, 89-92 (1985) (fees awarded from common
     benefit created by action compelling state to claim dormant bank accounts); *Parker v. Los Angeles,*

27   44 Cal.App.3d 556, 567-568 (1974) (court upheld fee award equal to one-third of the damages to

28   owners of residential property in an inverse condemnation action).

1   fair and reasonable, and is consistent with awards in California and Federal courts.  Here counsel

2   requests less than 33.33% of the total settlement funds.

3        **B.        The Circumstances of this Case Support the Fee Award**

4        Given the significant results achieved under the circumstances of this litigation, the fee award

5   is reasonable. As encapsulated in *Sumitomo Copper Litigation, supra*, 74 F. Supp. 2d at 396:

> No one expects a lawyer whose compensation is contingent on the success of his
> services to charge, when successful, as little as he would charge a client who in
> advance of the litigation has agreed to pay for his services, regardless of success. Nor,
> particularly in complicated cases producing large recoveries, is it just to make a fee
> depend solely on the reasonable amount of time expended.

10  In that vein, this Court should consider the contingency nature of this case, the uncertainty of the

11  outcome, the length of the litigation the quality of the counsel, and the preclusion from other

12  employment as described below:

13        a)        The Contingent Nature of This Case

14        From the outset of the case to the present, prosecution of this action has involved significant

15  financial risk for Class Counsel. Class Counsel undertook this matter solely on a contingent basis,

16  with no guarantee of recovery. Class Counsel has placed their resources at risk to prosecute this

17  action with no guarantee of success. Mallison Decl. ¶57. All of this time and effort was invested

18  without any guarantee of success. *Id*. There was no certainty that Class Counsel would get the class

19  certified, maintain class certification throughout the case, and that Plaintiffs would succeed at trial.

20  *Id*. Despite such challenges, Class Counsel was able to persuade Defendants that they faced

21  significant liability exposure so as to obtain the Settlement at hand. Mallison Decl. ¶57.

22        b)        The Experience, Reputation, and Ability of Counsel, and Skill in

23                  Litigation

24        Class Counsel has substantial experience in wage-and-hour and other class action litigation.

25  See e.g., Mallison Decl. ¶¶3-5. For example, Mr. Mallison has worked in complex class action cases

26  since 1996, first at Van Bourg Weinberg and Rosenfeld, and then between 1998 and 2005 at Milberg

27  Weiss and its successor Lerach Coughlin the largest class action firms in the country at the time.

28  Mallison Decl. ¶6. Similarly, Mr. Martinez has worked in complex wage and hour cases during his

entire career first at California Rural Legal Assistance then at the Los Angeles wage-and-hour class action firm Carter and Garay. Mallison Decl. ¶7. Since starting Mallison & Martinez, Mr. Martinez and Mr. Mallison have originated approximately 200 wage and hour class and representative actions. Mallison Decl. ¶5. Through their skill and reputation, Class Counsel was able to obtain settlements that provide a significant result for Settlement Class Members as is the case here.

c)   <u>The Results Achieved</u>

The results achieved by the Settlement support Class Counsel's request for attorneys' fees. Class Members directly benefit from the fair resolution of their claims in an amount of a total recovery of $185,000 in this settlement. This amount constitutes a reasonable recovery in a wage and hour case involving this class related to one season of employment. Class Members will be receiving significant awards in a relatively short period of time, as opposed to waiting years to recover some undetermined and potentially smaller amount if they succeeded at trial.  Mallison Decl. ¶37.

Plaintiffs' counsel obtained an exceptional result for Plaintiffs and the Class as confirmed by the damage modeling Plaintiffs' counsel has done based on the payroll and timekeeping data produced by Defendants, which suggests that settlement damages for the class, individual claims, fees and penalties would most likely not be significantly less than the amount of the award at trial. Mallison Decl. ¶49

Settlement Class Members' support for the results achieved by Class Counsel is demonstrated by the absence of <u>any</u> objections to either Settlement or to Class Counsel's request for fees, both of which were described clearly in the Notice. See Salinas Decl.¶15. Hence, the Settlement in this case is a good result – one that could only have been obtained by the hard-fought efforts of Plaintiffs' Counsel.

d)   <u>Preclusion of Other Employment</u>

As California law recognizes, Class Counsel's commitment to this litigation should not be assessed in a vacuum. See *Serrano*, supra, 20 Cal.3d at 49. A relevant factor in determining attorneys' fees is whether the litigation required Class Counsel to forego other employment. The instant case required that Class Counsel decline numerous other cases and stunted our advertising program for new cases because of the intensive litigation and time devoted to this case which ultimately could

1    have provided substantially more fees that this litigation. For example, Mallison & Martinez were

2    the first counsel to litigate illegal piece rate practices for mechanics – a rich field for wage and hour

3    class action cases. However, as a result of this case and others the firm has had to slow the

4    development of these cases. Notably, with the settlement of this case, the firm is now able to pursue

5    this important group of fee-generating cases. *Id.* In sum, Plaintiffs' counsel's attention and dedication

6    to this case precluded or delayed work on numerous mechanics cases in which counsel could have

7    worked. *Id.*  As such, the fee request is fair and reasonable.

8    **C.     No Class Member Has Objected to the Attorney Fee Award**

9    Counsel's fee request was clearly disclosed to each Class Member in the Court-approved

10   Notice of Class Action Settlement which was mailed to class members.  Ex. A, to Salinas Decl. As

11   of the filing of this brief, there has been not one single objection to the request for attorneys' fees.

12   Salinas Decl. ¶14. The Class Members' reaction to the Settlement demonstrates the reasonableness

13   of the Settlement. "It is established that the absence of a large number of objections to a proposed

14   class action settlement raises a strong presumption that the terms of a proposed class settlement

15   action are favorable to the class members." *In re Omnivision Techs*, 559 F. Supp. 2d at 1043 (quoting

16   *Nat'l Rural Telecomms, Coop. v, DIRECTV, Inc*. (C.D Cal. 2004) 221 F.R.D. 523529); see *Dunk*,

17   supra, 48 Cal.App.4th at 1802. A reasonable interpretation of the fact that there have been no

18   objections is that Class Members do not oppose the award of attorneys' fees.

19   **D.     Class Counsel Are Entitled To Reimbursement Of Their Litigation Costs**

20   The Court should also award Class Counsel litigation costs from the common fund, as

21   provided for in the Settlement Agreement. Settlement, § III.A.-B. Class Counsel have advanced

22   $9,612.49 in litigation costs for this case and will incur incidental additional costs finalizing the

23   settlement and monitoring the distribution process. Mallison Decl. ¶58; Martinez Decl. ¶8. This

24   totals $9,612.49.   The costs here are routinely reimbursed litigation costs, including: filing and

25   process serving fees; copying, delivery, mediator fees, and expert fees, and are outlined in the

26   Mallison Declaration at ¶56. As such, Plaintiffs' counsel requests a costs payment of $9,612.49

27   which is less than the $10,000 provided for in the Class Notice.

28

## IX.   **CONCLUSION**

For the reasons set forth above, the Plaintiffs respectfully request that the Court grant this motion in its entirety and enter an order: (1) finding that this class notice procedure afforded adequate protections to Class Members and provided the basis for the Court to make an informed decision regarding approval of the Settlement based on the responses of Class Members; (2) finding that the class notice provided in this case was the best notice practicable and satisfied the requirements of law and due process; (3)  finding that the proposed Class, as defined in the definitions section of the Settlement and conditionally certified by the Preliminary Approval Order, meets all of the legal requirements for class certification, and is finally approved and certified as a class for purposes of the Settlement; (4) finding that the terms of the Settlement are fair, reasonable and adequate to the Class and to each Class Member, and that the Class Members who did not timely submit valid elections not to participate in the Settlement in accordance with the Settlement Agreement and the Preliminary Approval Order will be bound by the Settlement, that all terms and provisions of the Settlement are finally approved; and (5) finding that the Settlement Administrator's (Simpluris) costs and fees ($10,000) are fair and reasonable and should be paid following completion of their administration duties in this matter; and (6) entering final judgment in accordance with the terms of the Settlement Agreement and the Order Granting Preliminary Approval of Class Action Settlement filed on August 22, 2018

Respectfully submitted,

Dated:  November 30, 2018.                STAN S. MALLISON
                                          HECTOR R. MARTINEZ
                                          MALLISON & MARTINEZ


                                          By:   _/s/ Stan S. Mallison_____
                                                   Stan S. Mallison
                                                Attorneys for Plaintiff
                                                   Carmela Mora