1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11 | CARMELA MORA, on behalf of herself and all others similarly situated, | Case No.: 1:15-cv-01490-LJO-EPG |
| 12 | | FINDINGS AND RECOMMENDATIONS REGARDING MOTION FOR FINAL |
| 13 | Plaintiff, | APPROVAL OF CLASS ACTION SETTLEMENT AND CLAIMS |
| 14 | v. | ADMINISTRATOR'S FEES, AND FOR ENTRY OF FINAL JUDGMENT |
| 15 | CAL WEST AG SERVICES, INC., JON | (ECF No. 88) |
| 16 | MARTHEDAL, and ERIC MARTHEDAL, | |
| 17 | Defendants. | |

18

This matter came before the Court on March 29, 2019, for a final fairness hearing on a proposed class action settlement (the "Settlement"). (ECF Nos. 88, 97.) Attorney Stanley Mallison appeared telephonically on behalf of Plaintiff, Carmela Mora, and the proposed class; and attorney Justin Campagne appeared telephonically on behalf of Defendants Eric Marthedal and Jon Marthedal (the "Marthedal Defendants"). The proposed Settlement is between Plaintiff, on behalf of herself and the proposed class, and the Marthedal Defendants; the remaining defendant, Cal West Ag Services, Inc., is not a party to the Settlement and did not appear at the March 29, 2019, hearing.

The Court recommends that final approval of the proposed class action settlement, with modifications to the proposed distributions, as discussed below, be granted.

## I.    BACKGROUND

This action was filed by Plaintiff, individually and on behalf of all others similarly situated, against defendants Cal West Ag Services, Inc., Jon Marthedal, and Eric Marthedal, alleging the following wage and hour claims for the proposed class:

1.    Violations of the Agricultural Worker Protection Act ("AWPA") (29 U.S.C. § 1801, et seq.);
2.    Failure to Pay Minimum Wages (Cal. Labor Code §§ 1194(a), 1194.2, 1197; California Industrial Welfare Commission ("IWC") Wage Orders 8, 13, 14);
3.    Failure to Provide Timely Paid Rest Periods or Compensation in Lieu Thereof (Cal. Labor Code §§ 226.7, 512; IWC Wage Orders 8, 13, 14);
4.    Failure to Timely Pay Wages Due at Termination (Cal. Labor Code §§ 201, 202, 203);
5.    Knowing and Intentional Failure to Comply with Itemized Employee Wage Statement Provisions (Cal. Labor Code §§ 229(B), 1174, 1175);
6.    Violation of Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 et seq.); and
7.    Enforcement of the Private Attorney General Act ("PAGA") (Cal. Labor Code § 2698).

(ECF No. 1.)

### A.    The Proposed Settlement

After conducting discovery, investigation, and an analysis of the strengths and weaknesses of the case, the parties participated in an all-day mediation before mediator Steven Vartabedin, retired Associate Justice for the California Court of Appeals for the Fifth Circuit. Plaintiff and the Marthedal Defendants agreed upon a proposed settlement (the "Settlement") of the class action, and a Settlement Agreement reflecting the terms of the Settlement was executed by Plaintiff on March 22, 2018, and by the Marthedal Defendants on April 2, 2018. (ECF No. 88-3.) The Settlement resolves all class claims against the Marthedal Defendants; defendant Cal West Ag is not a party to the Settlement and the Settlement does not affect any claims the Plaintiffs or the Marthedal Defendants may have against Cal West Ag. (*See id.*)

The Settlement covers all Cal West Ag's non-exempt workers who were employed by and/or performed work for the Marthedal Defendants as agricultural workers at Marthedal Farms in California between September 30, 2011, and August 22, 2019, which is the date of preliminary approval of the Settlement. (ECF No. 88-3 at 2.) The core damages are alleged to involve approximately 225 non-exempt field workers who worked for the Defendants picking

1  and packing blueberries during the period April 30, 2015, to June 5, 2015. (ECF No. 88-3 at 9;

2  ECF No. 71-2 at 14-15; ECF No. 79 at 2.)

3      Under the Settlement Agreement, the Marthedal Defendants will pay a total settlement

4  amount of $185,000, with this amount to be placed into a settlement fund administered by the

5  settlement administrator, Simpluris. The $185,000 settlement amount is inclusive of payments

6  to the proposed class and class representative; to the California Labor and Workforce

7  Development Agency ("LWDA"); for Plaintiff and class counsel's attorneys' fees and costs;

8  and to the settlement administrator for the costs of administering the settlement. (*Id.*) The

9  Settlement Agreement provides that Plaintiff's counsel is to file an application for fees and

10  costs, seeking an award of fees of not more than 33.33% of the gross settlement amount, and

11  costs not to exceed $10,000. (*Id.* at 7.) The proposed class representative, Plaintiff Carmela

12  Mora, is to apply to the Court for an award of up to $10,000 for her class representation, in

13  addition to whatever payment, if any, she may be otherwise entitled to from the settlement fund

14  as a settlement class member. (*Id.*) The costs of settlement administration are to be paid out of

15  the gross settlement fund as approved by the Court, with every effort undertaken to minimize

16  this cost. (*Id.* at 8.) The parties are to also apply to the Court for a payment to the LWDA of up

17  to $5,000 out of the gross settlement amount. (*Id.* at 7.) The settlement is non-reversionary. (*Id.*

18  at 6.)

19      **B.  Preliminary Approval**

20      On April 6, 2018, Plaintiff filed an unopposed motion for preliminary approval of the

21  Settlement. (ECF No. 71.) After a hearing on the motion (ECF No. 74), and obtaining

22  supplemental information from the parties (ECF Nos. 76, 77, 78), the Court issued findings and

23  recommendations ("F&R's") making a preliminary finding that the proposed Settlement was

24  fundamentally fair, reasonable, and adequate. The Court noted that when settlement occurs

25  before class certification, the Court must also take extra care to ensure that "the settlement is

26  not the product of collusion among the negotiating parties." *Bluetooth*, 654 F.3d at 946. After

27  balancing the relevant factors, the Court found the proposed Settlement to be fair and to meet

28  the requirements of Rule 23(e)(2). The Court cautioned the parties that the proposed

distributions for class counsel attorneys' fees and for the class representative service award appeared to be excessive and that sufficient justification for these proposed distributions would be required in connection with the request for final approval. (*See* ECF No. 80 at 18, 19-20.) The apparent excessiveness of these two proposed distributions did not, however, prevent the Court from finding preliminary approval of the Settlement to be appropriate. The Court therefore issued F&Rs recommending that the District Court grant preliminary approval of the proposed Settlement, conditioned on the settling parties making specified modifications to the notice to be provided to class members. (ECF No. 80 at 25-28.)

The District Judge, as part of his review of this Court's F&Rs, requested supplemental information from the parties regarding the PAGA claims. Specifically, the District Judge sought supplemental information on the reasoning behind the Settlement of the PAGA claims for the sum of only $5,000, when Plaintiff had previously indicated that these claims had a verdict value of at least $1,000,000. (ECF No. 81.) The parties provided the requested supplemental information in which they explained that they had agreed to settle the PAGA claims for $5,000 because it appeared that those claims had not been administratively exhausted and there was thus a substantial risk in continuing litigation on those claims. (ECF No. 83.) With this supplemental information, the District Court issued an order adopting in full this Court's F&Rs and ordering: (1) the proposed settlement class conditionally certified; (2) the Settlement Agreement preliminarily approved; (3) the Settlement Notice package approved conditioned on the settling parties making specified modifications to the Notice; (4) Plaintiff Carmela Mora appointed as class representative and Plaintiff's counsel as class counsel, and (5) that a final fairness hearing be set. (ECF No. 84.)

### C. Motion for Final Approval

On November 30, 2018, Plaintiff filed a motion for final approval of the Settlement. (ECF No. 88.) After reviewing the motion, the Court determined that counsel had not complied with conditions imposed in the Court's order granting preliminary approval of the Settlement. Specifically, the parties had failed to file for Court approval a second revised Notice of Class Action Settlement incorporating the modifications required by the Court and, further, the Notice

1  sent to class members (attached to the Motion for Final Approval as Exhibit A) did not include

2  the required modifications. (*See* ECF Nos. 80, 84, 88, 90.) Finally, the Motion for Final

3  Approval, which includes a request for class counsel attorneys' fees and costs, was filed on

4  November 30, 2018, which violated the Court's requirement that the motion for attorneys' fees

5  and costs be filed no later than fourteen calendar days before the deadline for class member

6  objections or requests for exclusion. (*Ibid.*) The Court therefore vacated the fairness hearing

7  that was set for January 11, 2019; required the parties to send to class members a revised notice

8  that complied with the Court's order granting preliminary approval; and continued the final

9  fairness hearing to March 29, 2019. (*See* ECF Nos. 90, 92, 93.)

10      On March 29, 2019, Plaintiff filed a supplemental declaration of Jarrod Salinas regarding

11  the revised notice and settlement administration (ECF No. 96). In his declaration, Mr. Salinas,

12  who is a case manager for settlement administrator Simpluris, states that a supplemental notice

13  that included the information required by the Court was mailed to class members on January 17,

14  2019, and class members were provided an additional 45 days to raise objections to the

15  Settlement. (*Id.* at 2.) As of March 29, 2019, the settlement administrator had received claims

16  from 51 class members, representing 20.32% of the entire settlement class,[1] and approximately

17  23.09% of the total class member pay periods from September 30, 2011, through August 22,

18  2018.[2] One class member disputed Defendants' records pre-printed on the class member's claim

19  form. (*Id.*) However, no class member requested to be excluded from the Settlement or

20  submitted objections to the Settlement. (*Id.*)

21      The continued final fairness hearing regarding the proposed Settlement was held on

22  March 29, 2019. Attorney Stanley Mallison appeared telephonically on behalf of Plaintiff, and

23  attorney Justin Campagne appeared telephonically on behalf of the Marthedal Defendants. No

24  objections to the Settlement were filed prior to or during the hearing, and no class member

25  appeared at the hearing. As to the class member who disputed Defendants' records, the parties

26

27      [1] There is a total of 251 class members in the settlement class.
       [2] There is a total of 563 pay periods for all class members, 130 of which have been claimed by class members
28  with qualified claims.

1  informed the Court that there was no objection to the disputed claim and that the disputed claim

2  would be resolved in the claimant's favor.

3      During the hearing, the Court expressed concern regarding the low participation rate in the

4  Settlement—only 20.32% of the settlement class submitted claims. In response, the parties

5  informed the Court that this level of participation is typical of this type of case, which involves

6  class members who are part of a migrant workforce and a case that is several years old.

7  **II.    LEGAL STANDARD FOR CLASS CERTIFICATION AND SETTLEMENT**

8      "A difficult balancing act almost always confronts a district court tasked with approving a

9  class action settlement." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015). "On the one

10  hand, . . . 'there is a strong judicial policy that favors settlements, particularly where complex

11  class action litigation is concerned.'" *Id.* (citations omitted). "But on the other hand, settlement

12  class actions present unique due process concerns for absent class members, and the district

13  court has a fiduciary duty to look after the interests of those absent class members." *Id.*

14  (citations and internal quotation marks omitted).

15      "To guard against this potential for class action abuse, Rule 23(e) of the Federal Rules of

16  Civil Procedure requires court approval of all class action settlements, which may be granted

17  only after a fairness hearing and a determination that the settlement taken as a whole is fair,

18  reasonable, and adequate." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th

19  Cir. 2011) (footnote added); *Staton v. Boeing Co.*, 327 F.3d 938, 972 n.22 (9th Cir. 2003)

20  (court's role is to police the "inherent tensions among class representation, defendant's interests

21  in minimizing the cost of the total settlement package, and class counsel's interest in fees").

22      Rule 23(e)'s class settlement process generally proceeds in two phases. In the first phase,

23  the court conditionally certifies the class, conducts a preliminary determination of the fairness

24  of the settlement (subject to a more stringent final review), and approves the notice to be

25  provided to the class. *Ontiveros v. Zamora*, 303 F.R.D. 356, 363 (E.D. Cal. 2014). The purpose

26  of the initial review is to ensure that an appropriate class exists and that the agreement is non-

27  collusive, without obvious deficiencies, and within the range of possible approval as to that

28  class. *See True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1062 (C.D. Cal. 2010);

Newberg on Class Actions § 13:13 (5th ed. 2014).

In the second phase, the court holds a full fairness hearing where class members may present objections to class certification, or the fairness of the settlement agreement. *Ontiveros*, 303 F.R.D. at 363 (citing *Diaz v. Trust Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989)). Following the fairness hearing, the court is to take into account all of the information before it and confirm that class certification is appropriate, and that the settlement is fair, reasonable, and adequate. *See Valdez v. Neil Jones Food Co.*, 2015 WL 6697926, at * 8 (E.D. Cal. Nov. 2, 2015); *Miller v. CEVA Logistics USA, Inc.*, 2015 WL 4730176, at *3 (E.D. Cal. Aug. 10, 2015).

## III.  DISCUSSION

Here, the first phase of the Rule 23(e) class settlement process—the conditional approval of the class, the preliminary approval of the Settlement, and the approval of the notice to be provided to the class members—has been completed. (ECF Nos. 80, 84.) The parties are now before the Court for the second phase of the Rule 23(e) class settlement process: (1) final class certification and (2) final approval of the Settlement. (*See* ECF No. 88.)

On March 29, 2019, the Court held a final fairness hearing at which class members had the opportunity to present objections to class certification, or to the fairness of the Settlement. No objections were presented during this hearing, and no objections to the Settlement have been filed with the Court or received by the settlement administrator or class counsel. Although one claimant disputed Defendants' records regarding the number of pay periods she or he worked, this claimant did not object to the Settlement or class certification, and the parties have approved this claimant's disputed claim, resolving the dispute in the claimant's favor.

### A.  Final Class Certification

In this Court's previous F&Rs (ECF No. 80), adopted in full by the District Court (ECF No. 84), the Court made a preliminary finding that the proposed settlement class satisfies the requirements of Federal Rule of Civil Procedure 23(a) for purposes of settlement. The Court also made a preliminary finding that the proposed settlement class met the predominance and superiority requirements of Federal Rule of Civil Procedure 23(b)(3), which provides: "A class

action may be maintained if Rule 23(a) is satisfied and if . . . the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Thus, the class was conditionally certified under Federal Rule of Civil Procedure 23(c)(1), for the purposes of settlement only. (ECF Nos. 80 at 6-12, 84 at 3.)

There is no indication that the Court's preliminary determination that the proposed settlement class satisfies the requirements for class certification was in error. Further, no objection to class certification has been filed or raised by any class member or by the parties. Thus, for the reasons set forth in this Court's F&Rs recommending conditional class certification (ECF No. 80 at 6-12), and in the District Court's order adopting in full those F&Rs (ECF No. 84 at 3), the Court finds the requirements for final class certification under Federal Rule of Civil Procedure 23(a) and (b) to be satisfied and that the class should be certified under Federal Rule of Civil Procedure 23(c)(1), for purposes of settlement only, with the following persons certified as class members solely for the purpose of entering the Settlement in this matter: All Cal West Ag Service Inc.'s non-exempt workers who were employed by and/or performed work for Defendants Jon and Eric Marthedal as agricultural workers at Marthedal Farms in California between September 30, 2011 and August 22, 2018.

**B. <u>Final Approval of the Proposed Settlement</u>**

As previously noted, the initial notice that was sent to class members did not have the modifications required by the Court. However, a supplemental notice was subsequently sent to class members that included the required modifications and was approved by the Court. (*See* ECF Nos. 90, 91, 93, 96.) The Court finds that the notice and the procedures used to provide that notice to class members (*see* ECF Nos. 88-7, 96) are reasonable and adequately informed class members of the terms of the Settlement and the opportunity to participate in, object to, or opt out of the Settlement.

Turning to the proposed Settlement and whether it should be granted final approval, the following table sets forth the total settlement amount, the distributions from the total settlement amount that were initially proposed and preliminarily approved, the distributions finally

proposed, and the recommended adjustments to the proposed distributions.

|  | Initial Proposed | Final Proposed | Amount that is Fair, Reasonable, and Adequate |
|---|---|---|---|
| **Gross Settlement Fund** | **$185,000** | **$185,000** | **$185,000** |
| Requested Attorneys' Fees | ($61,661) | ($61,661) | ($61,661) |
| Requested Litigation Costs | ($10,000) | ($9,613) | ($9,613) |
| Requested Plaintiff Service Award | ($10,000) | ($10,000) | ($4,000) |
| Requested Settlement Administration Costs | ($10,000) | ($10,000) | ($10,000) |
| PAGA Penalties | ($5,000) | ($5,000) | ($5,000) |
| **Net Amount for Distribution to Class Members** | **$88,339** | **$88,726** | **$94,726** |

As indicated by this table, and as discussed below, the Court finds the total amount of the Settlement, and the final proposed distribution of the gross settlement fund—with the exception of the requested Plaintiff service award—to be reasonable, fair, and adequate.

> 1. *Gross Settlement Fund*

Where, as here, the proposed settlement agreement will bind absent class members, the Court must find that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see also Bluetooth*, 654 F.3d at 946. When settlement occurs before class certification, the Court must also take extra care to ensure that "the settlement is not the product of collusion among the negotiating parties." *Bluetooth*, 654 F.3d at 946.

Although the factors in a court's fairness assessment will vary from case to case, courts generally must weigh:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Id.* (citations omitted). "This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (citations omitted). Here, after balancing the relevant factors, the Court finds the amount of the

1     Settlement to be fair, reasonable, and adequate.

2         As to the strength of Plaintiff's case, the Court recognizes that wage-and-hour cases, such

3 as the present one, brought on behalf of low-wage workers who are part of a migratory work

4 force can be difficult to prove. Although Plaintiff indicates her belief that she has a strong case,

5 she acknowledges the uncertainties of proving the class claims. During the May 3, 2018,

6 preliminary approval hearing, counsel indicated some of the potential risks if the litigation were

7 to proceed, including the difficulty of calculating damages, the potential inaccuracy of wage

8 statements, and unsettled or unclear law relating to whether the proposed class would be entitled

9 to penalties. Plaintiff's counsel also indicated that, although there are methods to get around the

10 requirement for live testimony, the migratory nature of the class members would make it

11 difficult to take the case to trial. Further, if the action were to continue without settlement,

12 Plaintiff anticipates vigorous and lengthy challenges by Defendants regarding class certification

13 and the merits of the class claims, and Plaintiff acknowledges that there is a significant risk that

14 Defendants would prevail on their defenses.

15         The parties engaged in a fair amount of discovery, investigation, and analysis and indicate

16 that they were well informed of the strengths and weaknesses of the case. Plaintiff's counsel

17 interviewed numerous witnesses, reviewed thousands of pages of documents and/or data from

18 employees, and propounded several sets of discovery on Defendants through which counsel

19 obtained critical information, such as core payroll and timekeeping information. (ECF No. 88-2

20 at 15-16.) Plaintiff's counsel deconstructed and analyzed the voluminous information with the

21 help of Plaintiff, Plaintiff's database expert, and other witnesses, thereby increasing counsel's

22 understanding of the case and strengthening Plaintiff's negotiating position. (*Id.*) Defendants

23 also engaged in discovery, including propounding written discovery on Plaintiff and deposing

24 Plaintiff. (*Id.*)

25         After conducting discovery, investigation, and analysis, the parties participated in an all-

26 day mediation before an experienced wage-and-hour class action mediator, Steven Vartabedian,

27 a retired Associate Justice for the California Court of Appeals for the Fifth Circuit. The parties

28 apprised Mr. Vartabedian of the arguments and facts of the case through briefing and factual

presentations, and ultimately agreed upon the Settlement.

Plaintiff has been represented by experienced counsel throughout this litigation, including during the mediation. (*See* ECF Nos. 88-2, 88-5 (setting forth experience of counsel and some of the class actions in which counsel have been involved).) Plaintiff's counsel indicates the belief that the "Settlement is reasonable, fair and adequate"; and that the Settlement "is a compromise figure, taking into account the risk associated with further litigation both in determining the fairness of total Settlement as well as the propriety of other terms." (ECF No. 88-2 at 16.) Counsel opines that the Settlement of the case for $185,000

> is reasonable and adequate and is in the best interest of the class, in light of all known facts and circumstances, including the risk of significant delay, the defenses asserted by Defendants, the amount of potential damages in this case, and success on the merits at trial. Defendants contest liability in this action, are represented by zealous and talented counsel, and are prepared to vigorously defend against these claims if the action is not settled. If the litigation proceeds, Plaintiff would face significant risks.

(ECF No. 88-2 at 18-19.)

The Court gives great weight to these views of counsel. *See Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 626 (9th Cir. 1982) ("Great weight is accorded [to the views of counsel] because he is exposed to the litigants, and their strategies, positions and proofs. He is aware of the expense and possible legal bars to success. Simply stated, he is on the firing line and can evaluate the action accordingly." (citation omitted)); *see also Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527–28 (C.D. Cal. 2004) ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." (citations omitted)).

Plaintiff represents that the $185,000 provides an amount that is close to the alleged actual damages (but not civil penalties) that are available in a successfully prosecuted class action under Code §§ 226, 226.3, 203, 256, and 210. Although Plaintiff valued the class action claims and penalties at $1.2 million, more than $1 million of that amount is comprised of derivative penalties under Cal. Labor Code §§ 226, 226.3, 203, 256, and 210.[3] Plaintiff concedes the

---

[3] The PAGA provides an independent basis for relief. However, the parties agree that the PAGA claims do not appear to be administratively exhausted and that the $1.2 million valuation was made without reference to the PAGA. As discussed below, the parties agreed to a $5,000 allocation for the PAGA component of the settlement.

difficulty of recovering such penalties, including the need to show that Defendants acted willfully and "the speculative nature of the recovery of penalties." (ECF No. 88-2 at 19.) Although the Settlement amount is only 15% of the $1.2 million value Plaintiff places on the case, when the $1 million in estimated derivative penalties is removed, the value is reduced to $200,000, making the Settlement amount 92% of the estimated likely recovery.

The Court finds, after considering the relevant factors, including the lack of objection to the Settlement, that the $185,000 settlement amount is fair, reasonable, and adequate. *See In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 459 (9th Cir. 2000), as amended (June 19, 2000) (citation omitted) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."); *see also Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 964 (9th Cir. 2009) (in determining whether the amount offered in settlement is fair and reasonable, a court compares the proposed settlement amount to the best possible outcome for the class); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (finding a settlement amount constituting 25 to 35% of the amount of damages plaintiffs could have hoped to prove at trial fair and reasonable in light of the uncertainties involved in the case), aff'd, 331 F. App'x 452 (9th Cir. 2009).

### 2. <u>Attorneys' Fees</u>

When a negotiated class action settlement includes an award of attorneys' fees, the fee award must be evaluated in the overall context of the settlement. *Knisley v. Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir. 2002). At the same time, the court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941; *see also Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328–29 (9th Cir. 1999). Where, as here, fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). As a result, the court must assume a fiduciary role for the class members in evaluating a request for an award of attorney fees from the common fund. *Id.*; *Rodriguez v. W. Publ'g Corp.*,

12

563 F.3d 948, 968 (9th Cir. 2009).

The Ninth Circuit has approved two methods for determining attorneys' fees in cases where the attorneys' fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted). The district court retains discretion in common fund cases to choose either method. *Id.*; *Vu v. Fashion Inst. of Design & Merch.*, 2016 WL 6211308, at *5 (C.D. Cal. Mar. 22, 2016). Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).

Under the percentage of the fund method, the court may award class counsel a given percentage of the common fund recovered for the class. *Id.* In the Ninth Circuit, a twenty-five percent award is the "benchmark" amount of attorneys' fees, but courts may adjust this figure upwards or downwards if the record shows "special circumstances justifying a departure." *Id.* (quoting *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). Percentage awards of between twenty and thirty percent are common. *See Vizcaino*, 290 F.3d at 1047; *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("This court's review of recent reported cases discloses that nearly all common fund awards range around 30% even after thorough application of either the lodestar or twelve-factor method."). Nonetheless, an explanation is necessary when the district court departs from the twenty-five percent benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000).

To assess whether the percentage requested is reasonable, courts may consider a number of factors, including:

> [T]he extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015) (internal

quotation marks omitted). The Ninth Circuit permits courts to award attorneys' fees using the percentage of fund method "in lieu of the often more time-consuming task of calculating the lodestar," but recommends using the lodestar method to cross-check the appropriateness of a percentage of fund award. *Bluetooth*, 654 F.3d at 942, 944.

Here, Plaintiff requests attorneys' fees in the amount of $61,661, which is consistent with the amount preliminarily proposed by the parties—33.33% of the gross settlement amount, plus any *pro rata* interest. (ECF Nos 88-1 at 23-27; 71-3 at 6.) As the Court noted in granting preliminary approval of the proposed Settlement, the 33.33% fee amount is above the 25% benchmark for this circuit. *See Bluetooth*, 654 F.3d at 947 (setting a 25% benchmark); *Staton*, 327 F.3d at 952 (same); *Six (6) Mexican Workers*, 904 F.2d at 1311 (same). Thus, counsel must "explain the 'special circumstances justifying a departure' from the benchmark," and the Court will "cross check the requested amount with the lodestar amount based upon counsels' submission, and will determine whether the award of an above-benchmark percentage in fees is reasonable here." (ECF No. 80 at 16-18 (citing *Bluetooth*, 654 F.3d at 942; *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000) (noting that an explanation is necessary when the court departs from the twenty-five percent benchmark).)

After considering the arguments and declarations of counsel, the lack of objection from class members to the requested attorneys' fees award, and the entire record in this case, and cross-checking the requested amount with the lodestar amount, the Court finds the requested attorneys' fees to be reasonable and appropriate.

First, as to the special circumstances justifying departure from the benchmark, the Court notes that due to the contingent nature of this case, Plaintiff's counsel's prosecution of the case has involved a significant financial risk, as counsel spent time and resources with no guarantee of success. In addition, to pursue this action, Plaintiff's counsel declined "numerous other cases and stunted [their] advertising program for new cases" and "precluded or delayed work on numerous" other cases. (ECF No. 88-1 at 26-27.)

Second, Plaintiff's counsel have substantial experience in class litigation in general, and in wage-and-hour cases in particular, including approximately 200 wage and hour class and

representative actions. (*See* ECF Nos. 88-2 at 3-10, 88-5 at 3-7 (describing notable class actions on which Plaintiff's counsel has worked and the experience of counsel).) The experience, skill, and reputation of counsel contributed to the results achieved in this case, including a class settlement that provides a significant financial benefit to participating class members.

Finally, a lodestar cross check confirms that the attorneys' fees request is reasonable. For the lodestar calculation, the court must first determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The Court has reviewed the number of hours expended by counsel and paralegals (set forth in the table below) over the two and one-half years during which this case was litigated, alongside the declarations of counsel describing the tasks performed. (*See* ECF Nos. 88-2, 88-5.) Based on this review, the Court finds the approximately 300 hours expended by counsel and paralegals in the course of this litigation to be reasonable. The Court does not, however, find the submitted hourly rates to be reasonable.

Counsel state that the hourly rates they have submitted are fair given the experience of counsel and the level of success in this field, and refer to the reasonableness of the rates in reference to attorneys in the San Francisco Bay Area and the Laffey matrix. (*See* ECF No. 88-2 at 5-10; ECF No. 88-5 at 6-7; ECF No. 88-4.) The Court is not, however, determining the reasonable hourly rate in the San Francisco Bay Area, but is instead determining the reasonable hourly rate in the forum in which this Court sits—the Fresno Division of the Eastern District of California. Based on the Court's experience, the hourly rates in the San Francisco Bay Area are significantly higher than the hourly rates in the Fresno Division. Moreover, the Laffey matrix is not determinative of a reasonable hourly rate in the Fresno Division. *See Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010) ("[J]ust because the Laffey matrix has been accepted in the District of Columbia does not mean that it is a sound basis for determining rates elsewhere, let alone in a legal market 3,000 miles away.").

The Court has previously found the hourly rate for competent and experienced attorneys in the Fresno Division to be between $250 and $400, "with the highest rates generally reserved for those attorneys who are regarded as competent and reputable and who possess in excess of 20

years of experience"; and paralegal hourly rates to range between $75 and $150.00. *Rodriguez v. Kraft Foods Grp., Inc.*, 2016 WL 5844378, at *12-13 (E.D. Cal. Oct. 5, 2016). Because counsel have not provided information regarding the years and experience of the paralegals, the Court will apply an adjusted rate for the paralegals of $100 per hour.

Applying Fresno Division rates based on the $250 to $400 range for attorneys' fees and $100 for paralegal fees, the Court's lodestar cross-check calculation is as follows:

| Name | Title | Yrs in Law | Hours | Rate | Adjusted Fresno Rate | Fees |
|------|-------|------------|-------|------|----------------------|------|
| Stan Mallison | Partner | 23 | 30.4 | $894 | $400 | $12,160 |
| Staci Schoff | Associate | 1 | 8 | $371 | $250 | $2,000 |
| Joseph Sutton | Mid-Level Associate | 9 | 148.709 | $658 | $325 | $48,330 |
| Eric Trabucco | Associate | 5 | 1.004 | $455 | $275 | $276 |
| Mario Martinez | Partner | 20 | 47.49 | $717 | $350 | $16,622 |
| Edgar Aguilasocho | Partner | 7 | 7.9 | $440 | $300 | $2,370 |
| Tom Lynch | Of Counsel | 27 | 1.75 | $894 | $400 | $700 |
| Aida Sotelo | Paralegal | ? | .75 | $196 | $100 | $75 |
| David Rodriguez | Paralegal | ? | 4.6 | $196 | $100 | $460 |
| Brenda Rizo | Paralegal | ? | 43.25 | $196 | $100 | $4,325 |
| **TOTAL** | | | **293.853** | | | **$87,318** |

The requested fees of $61,661 is lower than the lodestar cross-check amount of $87,318.[4] Under the circumstances of this case, and with this lodestar cross-check in mind, the Court finds that although the attorneys' fees requested by counsel exceed the 25% benchmark for this circuit, the requested fees are reasonable and accordingly should be approved.

### 3. *Litigation Costs*

"[A]n attorney who has created a common fund for the benefit of the class is entitled to

---

[4] Because the attorneys' fees requested are less than the unadjusted lodestar amount, the attorneys' fees requested are within the range of reasonableness and the Court need not proceed to the determination of whether a multiplier should be applied *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) (listing factors to be considered in determining whether to adjust the lodestar); *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000) (only the *Kerr* factors not already included in the lodestar calculation should be considered in determining whether to apply an adjustment); *see also Aboudi v. T-Mobile USA, Inc.*, 2015 WL 4923602, at *7 (S.D. Cal. Aug. 18, 2015) ("Multipliers of 1 to 4 are commonly found to be appropriate in common fund cases.").

reimbursement of reasonable litigation expenses from that fund." *Sanchez v. Frito-Lay, Inc.*, 2015 WL 4662636, at *20 (E.D. Cal. Aug. 5, 2015), *report and recommendation adopted*, 2015 WL 5138101 (E.D. Cal. Aug. 26, 2015); *Smith v. American Greetings Corp.*, 2016 WL 2909429, *9 (N.D. Cal. May 19, 2016) ("An attorney is entitled to 'recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client.'") (quoting *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)).

Here, Plaintiff requests costs in the amount of $9,612.49, which is less than the $10,000 in costs preliminarily proposed by the parties. (ECF Nos 88-1 at 23; 71-3 at 6.) Plaintiff's counsel have submitted declarations in support of the request for costs, itemizing costs Plaintiff seeks to recover. The most significant expenses included the requested costs are expert witness fees in the amount of $5009.65, and mediation fees in the amount of $1,800.00. The remaining costs for which Plaintiff seeks recovery include such things as the court filing fee; pro rata legal research cost; copying costs; fees for service of the summons and complaint; travel, lodging, and meal expenses for meditation; and travel expenses to meet with Plaintiff. (*See* ECF No. 99.) The Court finds the requested costs to be reasonably incurred in litigating this case and, accordingly, recommends that litigation costs in the amount of $9,612.49 be approved.

### 4. *Class Representative Service Payment to Carmela Mora*

A district court may award incentive payments to named plaintiffs in class action cases. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009); *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). The Ninth Circuit has emphasized, however, that "district courts must be vigilant in scrutinizing all incentive awards." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (internal quotation marks and citation omitted). Courts must carefully consider the disparity between the service award requested for named class members and the amount that will be rewarded to unnamed class members "because excessive payments to named class members can be an indication that the agreement was reached through fraud or collusion." *Staton*, 327 F.3d at 975. "Indeed, '[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed

to guard.'" *Id.* (citations omitted). Further, overcompensation of class representatives could encourage collusion at the settlement stage of class actions by causing a divergence between the interests of the named plaintiff and the absent class members, destroying the adequacy of class representation. *See Staton*, 327 F.3d at 977-78; *see also Radcliffe*, 715 F.3d at 1165.

In determining whether a requested service award is appropriate, a "district court must evaluate their awards individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation ... and reasonabl[e] fear[s of] workplace retaliation.'" *Id.* at 977 (citation omitted). To ensure that the incentive payment is not excessive, the district court must balance "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *Id.* "Additionally, class members can certainly be repaid from any cost allotment for their substantiated litigation expenses, and identifiable services rendered to the class directly under the supervision of class counsel can be reimbursed as well from the fees awarded to the attorneys." *Id.* (citing *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989)).

Here, in granting preliminary approval of the Settlement, the Court cautioned the parties that the proposed $10,000 service award for the class representative appeared to be excessive under the circumstances of the case. (ECF No. 80 at 19-20.) The Court instructed the parties that as part of the final fairness determination, the Court "will review Plaintiff's evidence that the requested incentive award is warranted here, including evidence of the specific amount of time Plaintiff spent on the litigation, the particular risks and burdens carried by Plaintiff as a result of the litigation, and the particular benefit that Plaintiff provided to counsel and the class as a whole throughout the litigation." (*Id.*)

In the motion for final approval, Plaintiff contends that a $10,000 service award for Ms. Mora is justified to "recognize the broader release of all of [her] claims" for the benefit of the class to ensure the class claims were pursued and settled favorably; and "to compensate [her] for her extensive efforts that she has spent on behalf of the Class over the course of this litigation.

The amount of effort and dedication expressed by this Plaintiff exceeded expectations." (ECF No. 88-1 at 22 (citation omitted).)

As to Ms. Mora's "broader release of all of [her] claims," as part of the Settlement, "[g]enerally, when a person 'join[s] in bringing [an] action as a class action ... [s]he has disclaimed any right to a preferred position in the settlement.' Were that not the case, there would be considerable danger of individuals bringing cases as class actions principally to increase their own leverage to attain a remunerative settlement for themselves and then trading on that leverage in the course of negotiations." *Staton*, 327 F.3d at 976 (citation omitted). Thus, by joining in bringing this class action, Ms. Mora disclaimed any right to a preferred position in the Settlement for releasing her claims.

As to Ms. Mora's efforts and dedication on behalf of the Class over the course of this litigation, the motion lists the tasks that Ms. Mora performed as including: (1) assisting counsel in investigating and substantiating the claims alleged in the action; (2) assisting in the preparation of the complaint; (3) producing evidentiary documents to counsel; and (4) assisting with mediation and settlement of the litigation. (ECF No. 88-1 at 22.) Ms. Mora states in her declaration that she "spent a considerable amount of time assisting my attorneys in the investigation and discovery associated with this action. I also maintained regular contact with my attorneys and their staff during this litigation." (ECF No. 88-6 at 2.) Ms. Mora estimates her time spent on this case as follows:

- "In total, I estimate that I have spent nearly 10 to 15 hours conversing by phone regarding case status updates and discussing strategy with the attorneys."
- "I have attended approximately 5-6 meetings with my attorneys since 2015 to the present in Fresno and Madera, California, lasting approximately 1 to 2 hours each meeting."
- "I estimate that I have spent about 2 to 3 hours contacting potential witnesses that previously worked with Defendants in this case."
- "I spent 15 to 20 hours discussing my documents and working on discovery responses with my attorneys and their staff."

- "I have discussed the terms of the Settlement stemming from the mediation with my lawyers and I support it. I believe that the settlement is fair and reasonable and in the best interest of the class."
- "Additionally, in order to complete this declaration with my attorneys, I spent approximately 1 hour."

(ECF No. 88-6.)

The Court recognizes the time, effort, and dedication of Ms. Mora in bringing and ultimately settling this action, but finds the proposed service award to be excessive under the circumstances of this case. The proposed award of $10,000 represents an unreasonably high proportion—5.4%—of the gross settlement amount and, based on Ms. Mora's estimates that she spent approximately 33 to 51 hours on this case, excessive compensation for the time she expended as class representative. *See Ontiveros*, 303 F.R.D. at 365-66 (incentive award of $20,000, comprising 1% of the common fund, excessive under the circumstances; award reduced to $15,000, where class representative spent 271 hours on the litigation and relinquished the opportunity to bring several of his own claims in order to act as class representative)*; Ko v. Natura Pet Prods., Inc.*, 2012 WL 3945541, at *15 (N.D. Cal. Sept. 10, 2012) (incentive award of $20,000, comprising one percent of the approximately $2 million common fund, excessive under the circumstances; award reduced to $5,000); *Wolph v. Acer Am. Corp.*, 2013 WL 5718440, at *6 (N.D. Cal. Oct. 21, 2013) (incentive award reduced to $2,000 where the class representatives did not demonstrate great risk to finances or reputation in bringing the class action); *cf. Staton*, 327 F.3d at 976 (noting that the Ninth Circuit has "approved incentive awards of $5,000 each to the two class representatives of 5,400 potential class members in a settlement of $1.725 million" (citation omitted)).

The cases cited by Plaintiff's counsel in support of the service award requested for Ms. Mora are distinguishable and do not convince the Court that an award of $10,000 is warranted in this case.

In *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001), the class representatives were awarded $300,000 each in lieu of the compensation they would have

otherwise received as members of the class. The settlement involved total current cash payments of approximately $103.5 million, as well as future relief with an estimated value of $43.5 million, and an average recovery for class members of approximately $38,000. *Id.* at 688, 694 n.11. The court found that a substantial incentive award was warranted in light of the substantial services performed by the class representatives on behalf of the Class, the risks they incurred, and the magnitude of relief the class representatives obtained on behalf of the class. *Id.*

> A great deal of evidence has been presented to the Court regarding the unique and extraordinary contribution these four individuals made to the investigation, prosecution, and settlement of this case. That factual showing is bolstered by the testimony of Class Counsel and the mediator, who uniformly agreed that in no prior case within their experience had Class Representatives been as involved with the litigation as in this case. Of note is the fact that the four Class Representatives in this case directly participated in the mediation process and vigorously asserted the interests of the class, as Class Counsel and the mediator attested. Further, the Class Representatives took risks, bore hardships, and made sacrifices that absent class members did not. Significantly, the Class Representatives have agreed never to seek re-employment with Coca–Cola.

*Id.*

Ingram is distinguishable from the present case in several respects. First, the service award was sought in lieu of compensation that the class members would have otherwise received as members of the class. In contrast, Ms. Mora is seeking a service award in addition to, and not in lieu of, the compensation she will receive as a member of the class. Second, based on the recovery in *Ingram*—which totaled $147 million—the requested service award for each of the four class representatives was only 0.2% of the total recovery, for a combined service award for all four of 0.8% of the total recovery. In contrast, in the present case, the $10,000 service award requested for Ms. Mora would be 5.4% of the $185,000 total settlement amount. Further, the class representatives in *Ingram* not only fully and vigorously participated in the litigation and settlement of the case, but also bore significant hardships, risks, and sacrifices. In the present case, in contrast, there is no indication that Ms. Mora has experienced the level of hardships, risks, and sacrifices that would warrant a $10,000 service award.

In *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 296, 300 (N.D. Cal. 1995), the court found the requested class representative service award of $100,000 to be excessive in a case that settled for $76.7 million after a jury trial and while the case was pending on appeal. *Id.* at 296. Regarding the request for a $100,000 service award, the court found

21

several . . . factors support Van Vranken's request for an incentive award. Van Vranken's participation lasted through many years of litigation. Furthermore, according to Class Counsel, Van Vranken's testimony at trial was key in rebutting ARCO's "good faith" defense. In exchange for his participation, Van Vranken will not receive great personal benefit. He owns a moderately sized truck stop and his claim makes up only a tiny fraction of the common fund.

However, after reviewing the actual time that Van Vranken spent on the case, the Court finds that a $100,000 award would be excessive. In his declaration, Van Vranken does not quantify how many hours he spent on the litigation or when he spent them. He merely states that he participated in 49 telephone conferences and five meetings with Class Counsel, attended three pre-trial hearings, had his deposition taken twice, and testified at trial. He further asserts that he made various unspecified out-of-pocket expenditures for gas, occasional meals, and wear and tear on his car during his travels from Fresno to San Francisco, San Jose, and Los Angeles.

*Id.* 299-300. The Court accordingly reduced the award to $50,000, which the Court found to be just and reasonable under the circumstances. *Id.* at 300.

Thus, the class representative in *Van Vranken* participated in 49 telephone conferences, 5 meetings with class counsel, attended 3 pre-trial hearings, had his deposition taken twice, and testified at trial. Yet, the court rejected a service award of $100,000, which would have represented only 0.13% of the total settlement amount ($76.7 million), and reduced the service award to $50,000, which represented 0.06% of the total settlement amount, based on the amount of time the class representative spent on the case.

In the present case, there is no indication that Ms. Mora had her deposition taken, there were neither pre-trial hearings nor a trial, and the number of meetings with class counsel that Ms. Mora participated in is significantly less than those participated in by the class representative in *Van Vranken*. Further, as noted previously, the requested $10,000 service award represents 5.4% of the total settlement amount, and would result in a payment of between $196 and $303 per hour for the time that Ms. Mora expended as class representative.

The Court has considered the time and effort of Ms. Mora in litigating this action, the total settlement amount, the average settlement share for class members, and the overall circumstances of the case and finds the requested service award of $10,000 to be excessive. The Court further finds that the service award should be reduced to $4,000. The Court recognizes that $4,000 still represents a significant percent—2.2%—of the total settlement amount, a percent

22

that may be viewed as excessive in other cases. *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir.2000) (approving incentive awards of $5,000 each to 2 class representatives of 5,400 potential class members in a settlement of $1.725 million); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (approving incentive awards of $2,000 to 5 named plaintiffs out of a class potentially numbering more than 4 million members in a settlement of $3 million); *Cook*, 142 F.3d at 1016 (approving incentive award of $25,000 to named plaintiff who "spent hundreds of hours with his attorneys and provided them with 'an abundance of information,'" where total recovery was more than $14 million); *see also Matter of Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 571-72 (7th Cir. 1992), *as amended on denial of reh'g* (May 22, 1992) (upholding district court's rejection of a proposed $10,000 award and refusal to award any service payment to named plaintiff where the plaintiff provided "admittedly modest services" in case where total recovery was $45 million). The Court finds, however, the $4,000 service award to be just and reasonable under the circumstances of the present case, including the key role that Ms. Mora played in assisting counsel with prosecuting and settling this case, and reaching out to class members. Indeed, counsel have represented that settlement of the case would not have possible without the assistance and sacrifices of Ms. Mora. (ECF No. 88-1 at 22.) The justness and reasonableness of a $4,000 service award is further supported by a comparison with the average settlement share for all class members of approximately $1,732, and the highest settlement share of approximately $3,398. *See Staton*, 327 F.3d at 975 (courts must carefully consider the disparity between the service award requested for named class members and the amount that will be rewarded to unnamed class members "because excessive payments to named class members can be an indication that the agreement was reached through fraud or collusion").

### 5. *Settlement Administration Costs*

In the motion for preliminary approval, counsel estimated the costs of claim administration at $10,000, which was $1,000 greater than the $9,000 bid submitted by the proposed settlement administrator, Simpluris, "to account for any unforeseen additional expenses which may be necessary and/ordered by the Court." (ECF No. 71-1 at 18-19.)

The motion for final approval, consistent with the preliminary estimate, seeks an award of $10,000 for Simpluris. (ECF No. 88-1 at 12-13, 28.) The declarations of Simpluris case manager, Jarrod Salinas, is submitted in support of this request. (ECF Nos. 88-7, 96.) Mr. Salinas' declaration explains the steps Simpluris has taken to provide notice to the class members, track class member claims, and work with class members to resolve deficient claims or disputes. Mr. Salinas also states that "Simpluris' total costs for services in connection with the administration of this settlement, including fees incurred and anticipated future costs for completion of the administration, are $10,000.00. Simpluris' work in connection with this matter will continue with the calculation of settlement checks, issuance and mailing of those settlement checks, etc., and to do the necessary tax reporting on such payments." (*Ibid.*) Based on Mr. Salinas' declarations, the Court finds that the requirements imposed by the Settlement Agreement and the Court's orders regarding the provision of notice to class members and tracking of claims have been satisfied, and that an award of $10,000 to Simpluris for Settlement Administration is reasonable and appropriate and should be approved.

6. *PAGA Payment*

The parties also propose a $5,000 payment to the LWDA in settlement of the LDWA's share of the PAGA settlement of civil penalties paid under the Settlement Agreement. (ECF No. 88-1 at 9; 88-3 at 7.) This $5,000 payment is consistent with the amount preliminarily approved by the Court and included in the Notice provided to Class Members. As noted previously, it appears that the PAGA claims were not administratively exhausted and the settlement of those claims for a payment to LWDA of $5,000 is fair, reasonable, and appropriate.

7. *Net Settlement Amount for Distribution and Settlement Share*

The net settlement amount for distribution was preliminarily proposed to be $88,339, and the average settlement share was preliminarily estimated to be $393. The estimated average settlement share was based on participation in the Settlement by all of the estimated 225 potential Class Members.

The final net settlement amount for distribution to Class Members is $93,318, which is higher than the amount preliminarily proposed. The increase in the net funds available for

distribution is due to the reduction from the $10,000 preliminarily budgeted for litigation costs to the $9,612.49 actually requested, and the recommended reduction in the service award for Ms. Mora, from $10,000 to $4,000.

The average settlement share has also increased from the preliminary estimate of $393, to a final proposed average settlement share of approximately $1,732.[5] (ECF No. 96 at 3.) This increase is primarily due to the low number of participating Class Members. Of the 251 members of the settlement class, only 51 members, representing only 20.32% of class members, submitted qualified claims.

During the final fairness hearing, when the Court expressed concern regarding the low number of participating class members, counsel assured the Court that this low participation rate is typical of these types of cases, which involve class members who are part of a migrant workforce and a case that is several years old. Although the Court remains concerned about the low participation rate, the Court finds that the notice and the procedures used to provide that notice to class members was reasonable and adequately informed class members of the terms of the Settlement and the opportunity to participate in, object to, or opt out of the Settlement, and that the net settlement amount available for distribution to class members, and the settlement shares to be reasonable, fair, and adequate.

## IV.   CONCLUSION AND RECOMMENDATION

Having considered the entire record, including the lack of any objection to the proposed settlement from class members, *see Mandujano v. Basic Vegetable Prods. Inc.*, 541 F.2d 832, 837 (9th Cir. 1976) (number of class members who object to a proposed settlement "is a factor to be considered when approving a settlement"), and for the reasons set forth herein, and in the Preliminary Approval Order (ECF Nos. 80, 84), and the preliminary approval and final fairness hearings, the Court HEREBY RECOMMENDS:

---

[5] These figures are approximate and do not reflect the claimant dispute regarding the number of pay periods attributed to the claimant, which, as discussed *supra*, was resolved in favor of the claimant. Further, this amount does not reflect the increase from $88,339, to $93,318 in net settlement funds available for distribution, which will result in an increase in the average settlement share from $1,732 to $1,830.

1.   For the reasons set forth herein, in the Preliminary Approval Order (ECF Nos. 80, 84), and during the preliminary and final approval hearings, which are adopted and incorporated herein by reference, finding that the requirements of Federal Rule of Civil Procedure 23 have been satisfied and granting final approval to the following class for purposes of the Settlement: All Cal West AG Service Inc.'s non-exempt workers who were employed by and/or performed work for Defendants Jon and Eric Marthedal as agricultural workers at Marthedal Farms in California between September 30, 2011 and August 22, 2018.

2.   Finding that the Class Notice, as revised pursuant to the Court's order, fully, fairly, and accurately described the proposed Settlement and informed class members of all material elements of the proposed Settlement and of their opportunity to object, opt out, or comment thereon; provided class members adequate instructions and a variety of means to obtain additional information; was the best notice practicable under the circumstances; was valid, due, and sufficient notice to all class members; and complied fully with the laws of the State of California, the United States Constitution, and due process.

3.   Finding that that class members were given a full and fair opportunity to participate in the Final Approval hearing; that all class members and other persons wishing to be heard have been heard; and that all class members who did not timely and properly opt out are bound by the Settlement and this Order.

4.   Finding that all relevant factors for determining the fairness of the Settlement have been considered and that all such factors weigh in favor of granting final approval. In particular, finding that the Settlement was reached following meaningful discovery, investigation, and analysis conducted by Plaintiffs' counsel; that the Settlement is the result of serious, informed, adversarial, and arm's length negotiations between the parties; and that the terms of the Settlement are in all respects fair, adequate, and reasonable, with the following modifications: litigation costs in the amount of $9,613; and a Plaintiff service award in the amount of $4,000.

5.   In so finding, that consideration has been given to all evidence presented, including evidence regarding the strength of Plaintiffs' case; the risk, expense, and complexity of the claims presented; the likely duration of further litigation; the amount offered in settlement; the

1   extent of investigation and discovery completed; the experience and views of Plaintiffs'

2   counsel; and the absence of objection to the Settlement.

3       6.   Accordingly, approving the Settlement as set forth in the Settlement Agreement and

4   modified herein; finding the Settlement, as modified, is in all respects, fair, reasonable,

5   adequate, and in the best interests of the entire settlement class; and directing implementation of

6   all remaining terms, conditions, and provisions of the Settlement Agreement, as modified.

7   Further, finding that settlement now will avoid additional and potentially substantial litigation

8   costs, as well as delay and risks if the parties were to continue to litigate the case. Additionally,

9   after considering the monetary recovery provided as part of the Settlement in light of the

10  challenges posed by continued litigation, concluding that the Settlement confers significant

11  relief on participating class members.

12      7.   Finding that Settlement shares to be paid to the class members who timely submitted

13  valid claim forms, as provided for by the Settlement Agreement and modified herein, are fair

14  and reasonable; and granting final approval to and order the payment of those amounts out of

15  the net settlement amount to class members who timely submitted valid claim forms, in

16  accordance with the terms of the Settlement Agreement, as modified herein.

17      8.   Finding the $5,000 payment to the California Labor and Workforce Development

18  Agency to be fair and reasonable and granting final approval to and ordering that amount be

19  paid out of the total settlement amount in accordance with the terms of the Settlement, as

20  modified herein.

21      9.   Finding that the fees and expenses in administering the Settlement, in the amount of

22  $10,000, are fair and reasonable, and granting final approval to and ordering that amount be

23  paid out of the total settlement amount in accordance with the terms of the Settlement, as

24  modified herein.

25      10.   Finding that a Plaintiff service award in the amount of $4,000, is fair and reasonable,

26  and granting final approval to and ordering that amount be paid out of the total settlement

27  amount in accordance with the terms of the Settlement, as modified herein.

28      11.   Finding that litigation costs in the amount of $9,612.49 and attorneys' fees in the

amount of $61,661.00 are fair and reasonable, and granting final approval to and ordering that amount to be paid out of the total settlement amount in accordance with the Settlement Agreement, as modified herein.

12. Without affecting the finality of the Court's order in any way, retaining jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation, and enforcement of the Court's order and the Settlement Agreement, as modified herein.

13. Finding that nothing in the Court's order will preclude any action to enforce the parties' obligations under the Settlement Agreement or under the Court's order, including the requirement that payments be made to class members in accordance with the Settlement Agreement, as modified herein.

14. Directing the settlement administrator to provide, upon completion of administration of the Settlement, written certification of such completion to the Court and counsel for the parties.

15. Ordering the parties to comply with the terms of the Settlement Agreement, as modified herein.

16. Entering final judgment in accordance with the terms of the Settlement Agreement, as modified herein, the Order Granting Preliminary Approval of Class Action Settlement (ECF Nos. 80, 84), and this order.

17. That the Court's order constitutes a final judgment (and a separate document constituting the judgment) for purposes of Federal Rule of Civil Procedure 58.

18. That the parties are to bear their own costs and attorneys' fees except as otherwise provided by the Court's order.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the

magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 13, 2019**                    /s/ *Erin P. Gros*
                                          UNITED STATES MAGISTRATE JUDGE